UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

ALICE BROWN,

     Plaintiff,

    v.

COUNTY OF DEL NORTE, et al.,

     Defendants.

Case No. 16-cv-07235-RMI

**ORDER**

Re: Dkt. Nos. 53, 56

Pending before the court are two motions for summary judgment filed by Defendants (Docs. 53, 56). Pursuant to Civil Local Rule 7-1(b), the court finds that this matter is appropriate for decision without oral argument and therefore takes the matter under submission on the papers. For the reasons stated below, the court will grant both motions for summary judgment.

## PROCEDURAL & FACTUAL BACKGROUND

On December 19, 2016, Plaintiff Alice Brown filed suit against the United States, the U.S. Department of the Interior, the Redwood National and State Parks Department, and a number of individually named National Park Rangers (collectively referred to hereafter as the "Federal Defendants"); the complaint also named the County of Del Norte (California), the Del Norte County Sheriff's Department, the current and the now-retired Sheriffs of Del Norte County, and a number of individually named Del Norte County Sheriff's Deputies (collectively referred to hereafter as the "County Defendants"). (Doc. 1). Plaintiff raised six claims against combinations of seventeen named Defendants concerning her arrest and the search of her vehicle on National Park property. (*Id*. at 19-21). All parties have filed their elections of consent to proceed before a magistrate judge. (Docs. 6, 13, 15, 23, 25).

Thereafter, three motions to dismiss were filed (Docs. 24, 27, 28), along with Plaintiff's responses in opposition (32, 37, 38), and Defendants' replies (33, 39, 40). On June 20, 2017, the Hon. Nandor J. Vadas entered an order granting all three motions to dismiss as to certain claims and parties, with leave for Plaintiff to file an amended complaint. (Doc. 44). Thereafter, on July 31, 2017, Plaintiff filed her Amended Complaint (Doc. 45), which named eleven Defendants and raised six claims. The remaining Federal Defendants filed their Answer (Doc. 46) on August 11, 2017, and the remaining County Defendants filed their Answer (Doc. 47) on August 16, 2017. On February 2, 2018, the Parties filed a joint Statement of Undisputed Facts for Use in Motions for Summary Judgment. (Doc. 52). The Federal Defendants then filed their Motion for Summary Judgment (Doc. 53) on February 9, 2018, and the County Defendants filed theirs (Doc. 56) on February 16, 2018. Plaintiff filed her responses to both motions on March 9, 2018. (Docs. 60, 61). The following week, on March 16, 2018, both groups of Defendants filed their reply briefs (Docs. 63, 65), and the matter became ripe for decision.

It should also be noted that on February 9, 2018, Plaintiff moved for the appointment of *pro bono* counsel (Doc. 54). Following this court's denial of that motion (Doc. 55), Plaintiff initiated the first of two interlocutory appeals in this case. (*See* Docs. 59, 62) (Court of Appeals Case No. 18-15374). On March 26, 2018, Plaintiff's first appeal was dismissed for lack of jurisdiction (Doc. 67), and the Mandate of the Court of Appeals issued on May 18, 2018. (Doc. 77). Additionally, on April 9, 2018, Plaintiff asked this court to recuse itself from her case (Doc. 70); and, following the denial (Doc. 71) of that motion, Plaintiff again attempted to lodge an immediate appeal. (Docs. 72, 73) (Court of Appeals Case No. 18-5649). On May 23, 2018, Plaintiff's second interlocutory appeal in this case was likewise dismissed for lack of jurisdiction (Doc. 74), and the Mandate of the Court of Appeals issued on July 16, 2018. (Doc. 76). Plaintiff currently has a petition for writ of certiorari pending in the Supreme Court (No. 17-9567), however, absent the issuance of a stay of the Ninth Circuit's mandate, the filing of a petition for writ of certiorari does not divest this court of jurisdiction to proceed with resolution of the issues remaining in this case. *See United States v. Sears*, 411 F.3d 1240, 1241-42 (9th Cir. 2005) ("Therefore, the mere filing of a petition for certiorari with the Supreme Court neither stops the

1  mandate from issuing nor stops the case from proceeding in the district court. A litigant desiring

2  such cessation must seek and obtain a stay.").

3  **The Allegations, Claims, and Demands in Plaintiff's Amended Complaint**

4  Plaintiff's Amended Complaint (Doc. 45) named eleven defendants falling into two

5  categories. The named Federal Defendants are four National Park Rangers: Joel Leachman, David

6  Keltner, Robert Toler, and Gregory Morse. (*Id*. at 2). The named County Defendants are the

7  County of Del Norte (California), Del Norte County Sheriffs Erik Apperson and Dean Wilson

8  (Retired), as well as Deputy Sheriffs Robert Clarkson, Neal Oilar, Adam Daniels, and Sergeant

9  Grant Henderson. (*Id*. 2-4).

10  *Plaintiff's Allegations:*

11  Plaintiff alleges that on December 21, 2014, she was homeless and living in her van, and

12  that she had been a resident of Del Norte County for the preceding three days, having recently

13  relocated from Nevada where she was also homeless. (*Id*. at 5-6). Plaintiff alleges that in the early

14  morning hours of December 21, 2014, while she was asleep in her van in the parking lot of the

15  Hiouchi Visitor Center, that there was a loud knock on the window of her van at 7:00 am, attended

16  with a loud exclamation, "Police! National Park Service!" (*Id*. at 6). Plaintiff later discovered that

17  the individual outside her van was National Park Ranger Joel Leachman, who immediately

18  inquired as to what Plaintiff was doing there. (*Id*.). Plaintiff informed Ranger Leachman that she

19  was sleeping in her van and had parked at the Hiouchi Visitor Center because she was homeless.

20  (*Id*.). Plaintiff then alleges that she was told that she was parked in an area where camping is

21  prohibited, and that Ranger Leachman asked her to open the back "hatch" door of her van

22  "because he needed to see inside her vehicle." (*Id*.). Plaintiff alleges that she told Ranger

23  Leachman that the back door could not be opened because the van was fully packed with her

24  belongings. (*Id*.). Plaintiff contends that Ranger Leachman then repeatedly, up to eight times, told

25  her to open some door or window to the van, and that the ventilation window that she had opened

26  was not sufficient for Ranger Leachman to be able to see into the vehicle. (*Id*. at 6-7). Plaintiff

27  relates that, within the span of a few minutes, Ranger Leachman told her, as many as five times,

28  that he needed to be able to see into her vehicle, and that he also told her, as many as four times,

that she needed to get out of the van. (*Id*. at 7). According to the Amended Complaint, it was at this moment that she concluded that Ranger Leachman "was attempting to perform an unreasonable search of her van and her person," accordingly, Plaintiff asked "what was the probable cause to search her van," and alleges that the response was "You're parked in an area that is closed to overnight camping, okay, period." (*Id*.). Plaintiff then alleges that she told Ranger Leachman that she would leave the area, but that she first needed to change her clothes. (*Id*.). Plaintiff relates that Ranger Leachman did not want her to leave, and that "when [Plaintiff] Brown did not jump out of her van half naked or open all the windows and doors so that [Ranger Leachman] can "see" in her van and "see" her, [Ranger Leachman] exclaimed that he would smash the window." (*Id*.). At which point, Plaintiff alleges, Ranger Leachman "stormed off to return to his vehicle." (*Id*.).

Plaintiff alleges that it was at this point that she began recording herself with an audio-recording feature on her cell phone, but that she continued to wait inside her van. (*Id*. at 7-8). After Plaintiff changed her clothes, and saw what she believed to be another vehicle approaching the area, she decided to get out of her van through the side door, and then to open the front door to the van in order to retrieve her keys. (*Id*. at 8). Plaintiff alleges that upon opening the front door of her van and reaching inside for her keys, that Ranger Leachman "rushed her from behind and threw her to the ground." (*Id*. at 8-9). Plaintiff alleges that, as a result of her being pushed to the ground, she suffered scrapes and minor cuts on her arms, elbows, and knees, and that a number of bruises appeared the following day, attended with soreness in her limbs. (*Id*. at 9).

Plaintiff alleges that Ranger Leachman then pried her keys out of her hand, to which Plaintiff reportedly responded that she did not give permission for any search of her van. (*Id*.). Plaintiff then alleges that Ranger Leachman handed her keys to Deputy Sheriff Clarkson, who then unlocked and opened the driver's side door to the van. (*Id*.). Plaintiff believed that Sheriff's Deputies arrived on the scene after she was thrown to the ground. (*Id*. at 10). Plaintiff alleges that a number of Sheriff's Deputies and Park Rangers watched as Ranger Leachman was "kneeling on her back" while he handcuffed her without regard to her complaints about the pain it was causing her. (*Id*.). Plaintiff's Amended Complaint then relates that she was placed under arrest by Ranger

4

Leachman for resisting an officer in the discharge of his duties. (*Id*. at 11). Plaintiff then alleges that the audio-video footage taken by Officer Leachman's body-camera shows him placing a now-handcuffed Plaintiff in a police car and then returning to search through Plaintiff's belongings inside the van. (*Id*. at 12). Plaintiff Alleges that Ranger Leachman took a bag of her medications from the van and asked another officer to "look for any methamphetamines in it." (*Id*.).

Plaintiff also alleges that Ranger Leachman "did not obtain a search warrant or court order before he demanded that [Plaintiff] Brown open the door to allow him to "see" what's in Brown's van and after he arrested her, therefore, the search conducted by [Ranger Leachman] was an illegal, unreasonable, warrantless search without probable cause and without consent." (*Id*. at 13). Plaintiff also asserts that the use of force involved in her arrest was excessive (*id*.), and that she was wrongfully and falsely arrested to begin with (*id*. at 14). Plaintiff alleges that Ranger Leachman "never requested consent to conduct a search or to "see" into Brown's van, he demanded Brown open up the door so that he could "see" into the van." (*Id*.). Plaintiff contends that Ranger Leachman "claimed he had probable cause to "see" in Brown's van due to illegal overnight camping[,] Brown disagrees." (*Id*.). Plaintiff adds that her eventual arrest for resisting or impeding an officer was a mere pretext, and that "it was an illegal and unreasonable tactic." (*Id*.).

Noting that police officers have a duty to intercede when their fellow officers may be violating a person's rights, Plaintiff alleged that none of the other named Defendants interceded, or managed to appropriately train or control their subordinates, and that by failing to so intercede or control their subordinates, they ratified Ranger Leachman's conduct. (*Id*. at 16-17). Lastly, Plaintiff alleges that her wrongful arrest, followed as it was by the impounding of her van, also cost her $345 in towing and storage fees. (*Id*. at 17).

*Plaintiff's Claims:*

Plaintiff has presented six claims through her Amended Complaint. (*Id*. at 18-30).

*Claim-1 (Fourth Amendment):*

In Claim-1, Plaintiff has named all eleven Defendants and advanced the claim that her Fourth Amendment right to be free from unreasonable searches and seizures was violated. (*Id*. at 18-20). Plaintiff claims that Ranger Leachman violated her Fourth Amendment rights "by

conducting an unreasonable search of her person and van without probable cause[,] with no search warrant, court order or consent [which then] led to Plaintiff Brown's arrest and prosecution for PC 148 [resisting, delaying, or obstructing any public officer]." (*Id*. at 18-19). Plaintiff also claims that National Park Rangers Keltner, Toler, and Morse, as well as Del Norte County Sheriff's Deputies Clarkson, Oilar, Daniels, and Henderson, are liable for their failure to intervene. (*Id*.). Lastly, Plaintiff claims that the County of Del Norte, as well as its current and former Sheriffs, are liable for allegedly failing to appropriately train Deputies Clarkson, Oilar, Daniels, and Henderson "in constitutional law." (*Id*. at 20).

*Claim-2 (Eighth Amendment)*:

Naming all eleven Defendants, Plaintiff claims that Ranger Leachman violated her Eight Amendment right to be free from cruel and unusual punishment "when he unreasonably seized and searched [Plaintiff] for engaging in the innocent and necessary act of sleeping in her vehicle and homelessness," and further, that when Ranger Leachman caused her van "to be impounded[,] it was a cruel and unusual and evil slap in the face by an equally cruel and unusual evil man." (*Id*. at 21-22). Plaintiff also claims that each of the other named National Park Rangers and Del Norte Sheriff's Deputies also violated her Eight Amendment rights by failing to intervene, and that the County of Del Norte, as well as its current and former Sheriffs, are liable for allegedly failing to appropriately train Deputies Clarkson, Oilar, Daniels, and Henderson "in constitutional law." (*Id*. at 22).

*Claim-3 (Fourteenth Amendment)*:

Naming all eleven Defendants and appearing to rely on the national citizenship clause of the Fourteenth Amendment, Plaintiff also contends that Ranger Leachman violated her Fourteenth Amendment rights "by disregarding the fact that [Plaintiff] Brown has constitutional rights by virtue of being born in the United States, despite her race (Black) and her homeless status." (*Id*. at 23). Plaintiff again claims that each of the other named National Park Rangers and Del Norte Sheriff's Deputies are liable for failing to intervene, and that the County of Del Norte, as well as its current and former Sheriffs, are liable for allegedly failing to appropriately train Deputies Clarkson, Oilar, Daniels, and Henderson "about Fourteenth Amendment rights." (*Id*. at 25).

*United States District Court*
*Northern District of California*

1

_Claim-4 (Excessive Use of Force)_:

2    Naming all eleven Defendants, Plaintiff contends that Ranger Leachman used excessive

3   force, causing her physical injury during her arrest and that the "use of any force at all was

4   completely unnecessary and unreasonable." (*Id*. at 26-27). Plaintiff also claims that each of the

5   other named National Park Rangers and Del Norte Sheriff's Deputies "are [also] being sued for

6   excessive use of force ... [because] all Defendants were present and had an opportunity to

7   intervene but did not." (*Id*. at 27). Finally, Plaintiff claims that the County of Del Norte, as well as

8   its current and former Sheriffs, are liable for allegedly failing to appropriately train Deputies

9   Clarkson, Oilar, Daniels, and Henderson "in use of force and when to apply force knowing that if

10  they don't train their employees about use of force and excessive use of force that they could

11  potentially cause harm or death to citizens." (*Id*.).

12    _Claim-5 (False Arrest)_:

13    Naming all eleven Defendants, Plaintiff claims that Ranger Leachman effectuated a "false

14  arrest of Plaintiff Alice Brown when he willfully and knowingly arrested Plaintiff Brown on false

15  pretense (sic) in order to gain access to Brown's vehicle." (*Id*. at 28).

16    _Claim-6 (Monell Claim)_:

17    Naming only the County Defendants, Plaintiff claims that these Defendants "are being

18  sued under *Monell* claim (sic) in their official capacity and individual capacity due to their pattern

19  and practice of failure to intervene and custom of conspiring to deprive Plaintiff Alice Brown of

20  Fourth, Eighth, Fourteenth Amendment rights . . . [which] had caused Alice Brown to suffer

21  constitutional injury." (*Id*. at 29). Plaintiff adds that Deputies Clarkson, Oilar, Daniels, and

22  Henderson were all present when her rights were violated and failed to intercede. (*Id*. at 30).

23  Plaintiff claims that the County of Del Norte, and its current and former Sheriffs "are being sued

24  for their failure to intervene and failure to train employees, also for their pattern and practice and

25  policy." (*Id*.). Lastly, Plaintiff adds that the current and former Sheriffs "refused to investigate

26  when Plaintiff requested over the phone and in person." (*Id*.).

27    _Plaintiff's Demand for Relief_:

28    Plaintiff seeks actual damages in the amount of $400 for impound fees and transportation

costs. Additionally, Plaintiff seeks "punitive damages in the amount of $10,000,000" for the claimed deprivations of her rights, for excessive use of force, for pain and suffering, and for humiliation. (*Id*. at 31).

**The Parties' Joint Statement of Undisputed Facts**

On February 2, 2018, the Parties submitted a jointly-executed Statement of Undisputed Facts for Use in Motions for Summary Judgment. (Doc. 52). Therein, the following facts were stipulated to be undisputed.

The incident at issue in this case took place on December 21, 2014, at the Hiouchi Visitor Center located off of Highway 199. (*Id*. at 1). Plaintiff arrived at the Hiouchi Visitor Center at approximately 11:00 p.m. on December 20, 2014, in a white Dodge Caravan van. (*Id*.). She parked her van so that her van was backed into a parking space. (*Id*.). Plaintiff's van had tinted windows, she placed a sun visor in the front windshield and used plastic bags such as to cover all windows; and, she took these actions to prevent anyone from seeing into her van while she slept. (*Id*.). The initial contact by law enforcement, on December 21, 2014, was made by Ranger Leachman at approximately 7:00 a.m., and it was still dark as the sun had not yet risen. (*Id*. at 2).

Ranger Leachman arrested Plaintiff for Resisting, Delaying or Obstructing a Peace Officer, a violation of California Penal Code §148. (*Id*.). Following Plaintiff's arrest on December 21, 2014, criminal charges were filed by the Del Norte County District Attorney in the Superior Court of California, County of Del Norte, on behalf of the People of the State of California. (*Id*.). The District Attorney added a charge of Unlawful Camping, a violation of California Code of Regulations, § 4451. (*Id*.). The criminal trial commenced on March 4, 2015, and on March 5, 2015, a jury found Plaintiff guilty of illegal camping and of resisting, delaying or obstructing a police officer. (*Id*.). On March 12, 2015, Judge McElfresh dismissed the conviction for unlawful camping. (*Id*.). The conviction for resisting or obstructing a police officer, a violation of California Penal Code § 148, has been upheld on appeal and has not been overturned or set aside. (*Id*.).

Also, it was stipulated that the transcript attached to the Joint Statement of Undisputed Facts as Exhibit "C" is a true and correct transcript of the audio recording attached thereto an Exhibit "B" (*Id*.). The audio-only recording begins with what appears to be an 8-minute narration

8

by Plaintiff while still inside her van. (*Id*. at 5-6). Plaintiff muses about a variety of topics including: that it being her birthday as well as a Sunday, it was particularly egregious for her to have been so rudely jolted from a sound sleep at such an early hour; that she supposed the police were back at their patrol car doing a warrant check under her name; that she was changing her clothes so as to "get the [expletive] out of here"; that she had refused to open the side door to her van because she did not believe she was committing any crimes; that since she treated her van as her home, she expected a court order or warrant for an officer to look inside; that police in America "don't have a clue" about the Fourth Amendment; and, that since it seemed that another motorist was arriving on the scene, Plaintiff decided to exit her van and make use of the motorist as a witness to Plaintiff's perceived illegal activity by the police. (*Id*.). The transcript reflects Plaintiff's narration to end with the following statements: "[s]omeone just pulled up . . . [w]hat I might do is get out of the van . . . [a]sk them to be a witness . . . Get out. Grab the key. Eight minutes into this." (*Id*. at 6).

Immediately after Plaintiff's narration, which apparently lasted for eight minutes, the transcript of her own audio recording shows that the following exchange took place:

| | |
|---|---|
| RANGER LEACHMAN: | Any weapons? |
| PLAINTIFF: | Shut up. You're so stupid! (inaudible.) |
| RANGER LEACHMAN: | (Inaudible.) |
| PLAINTIFF: | I already said (inaudible) a long time ago. |
| RANGER LEACHMAN: | Stay out of your front seat. |
| | Stay, stay out of your front seat. |
| | Come on. |
| | Get out of your front seat, ma'am! |
| | Do it now! |
| PLAINTIFF: | I'm not getting in there, you jackass! |

9

| | | |
|---|---|---|
| 1 | RANGER LEACHMAN: | Get down! |
| 2 | | Get on the ground! |
| 3 | | Get on the ground! |
| 4 | | Do it now! |
| 5 | | Get on the ground ma'am! |
| 6 | | Get on the ground! |
| 7 | | Do it now! |
| 8 | | Do it now! |
| 9 | | Do it now! |
| 10 | | |
| 11 | PLAINTIFF: | I got a tape recorder going so you |
| 12 | | might as well get off me. |
| 13 | RANGER LEACHMAN: | I do too ma'am. |
| 14 | | Get down! |
| 15 | | Get on the ground! |
| 16 | | Get on the ground! |
| 17 | | |
| 18 | PLAINTIFF: | I'm on the ground! |
| 19 | RANGER LEACHMAN: | Using force. Send backup. |
| 20 | PLAINTIFF: | What are you doing to me? |
| 21 | RANGER LEACHMAN: | Put your hands behind your back, |
| 22 | | ma'am. |
| 23 | | Put your hands behind your back. |
| 24 | | |
| 25 | PLAINTIFF: | Why are you doing this to me? |
| 26 | RANGER LEACHMAN: | I'm sorry ma'am. If you would have |
| 27 | | done what I said, there wouldn't be |
| 28 | | any issue right now. |

10

| PLAINTIFF: | (Inaudible.) Can you go get that |
| | witness over there? |
| | Help! |
| | Help me! |
| | The cops are trying to kill me! |
| | Help me! |
| | Go get that witness over there. |
| | Help me! |
| RANGER LEACHMAN: | Give me your other leg. |
| | Give me your other leg. |
| | Do it now. |

(*Id*. at 6-7).

### Federal Defendants' Motion for Summary Judgment

On February 9, 2018, the Federal Defendants (National Park Rangers Leachman, Keltner, Toler, and Morse) filed a motion for summary judgment, attaching five declarations, a number of video and audio files, and portions of Plaintiff's deposition testimony thereto. (Doc. 53). Federal Defendants contend that no Federal Defendant violated any of Plaintiff's constitutional rights, and that each is entitled to qualified immunity; further, that Plaintiff's claims for false arrest and violation of her Eighth and Fourteenth Amendment rights fail as a matter of law. Federal Defendants also contend that video and audio recordings, as well as the attached declarations of the Park Rangers will clearly demonstrate what transpired during the interactions between Ranger Leachman and Plaintiff. (*Id*. at 8, 9).

Federal Defendants contend that Ranger Leachman knocked on Plaintiff's van at approximately 7:00 a.m. on December 21, 2014, because it was illegal to sleep overnight at the visitor center, and that Plaintiff refused to provide any identification document or to exit the vehicle, despite repeated commands to that effect. (*Id*.). Federal Defendants contend that some

11

twenty minutes later, Plaintiff finally exited from the side of her van and began to access the front seat area of her van; and, that Ranger Leachman thought she might be attempting to access a weapon. (*Id*.). Federal Defendants add that when Ranger Leachman told Plaintiff to stay away from the passenger seat area of her van, she refused; that when Ranger Leachman told her to get to the ground, Plaintiff again refused; and, that Ranger Leachman eventually gained control of the situation by seizing Plaintiff's arm above and below the elbow such as to force her to the ground where he could secure her hands with handcuffs. (*Id*.).

Thereafter, Ranger Leachman arrested Brown for resisting, delaying or obstructing a police officer, a violation of California Penal Code §148; a charge on which she was convicted, and that was upheld on appeal. (Doc. 53 at 9). Federal Defendants contend that after Ranger Leachman frisked Plaintiff for weapons, she was placed inside his patrol vehicle while he searched for and located two items that Plaintiff had requested to be retrieved from her van. (*Id*.). Ranger Leachman then transported her to jail while Ranger Toler conducted a brief inventory of the contends of Plaintiff's vehicle before having it impounded. (*Id*.). In short, Federal Defendants contend that Rangers Leachman and Toler, the only Federal Defendants present at the scene, did not violate any of Plaintiff's constitutional rights, and are entitled to summary judgment because Plaintiff's Fourth Amendment claims of excessive force and unreasonable searches, as well as her other causes of action, fail as a matter of law. (*Id*.). As to Rangers Keltner and Morse, Federal Defendants contend that Ranger Keltner was in the State of Washington at the time of Plaintiff's arrest, and Ranger Morse's only connection to Plaintiff's arrest was a pair of short phone conversations that he had with Ranger Leachman before and after Plaintiff's arrest. (*Id*. at 10). Given that Rangers Keltner and Morse had no personal involvement in the arrest or any of the subsequent searches, they also seek summary judgment on that ground. (*Id*. at 10).

### *Federal Defendants' Declarations and Video Evidence*:

Ranger Joel Leachman began his shift on December 21, 2014, at 7:00 a.m., while it was still dark at the Redwood State and National Park. (Doc. 53 at 10, citing Declaration of Joel Leachman (hereafter "Leachman Decl.") Doc. 53-2 at ¶ 6, 7, 8, 29). When Ranger Leachman entered the Hiouchi Visitor Center parking lot, he observed a white Dodge Caravan that had been

backed into a parking space with a sun visor in place to cover the front windshield. (*Id*.). Ranger

Leachman suspected that if the van had any occupants, that those persons had spent the night there

in violation of California Code of Regulations Title 14 Section 4451. (*Id*.). Ranger Leachman

activated his overhead police lights, his car's mounted spotlight, as well as his body camera

recording device, and then went out to announce his presence. (*Id*.). The audio-video recording of

Ranger Leachman's encounter with Plaintiff that was produced by his body camera, has been filed

as an Exhibit to the Declaration of Ranger Leachman. (*See* Doc. 53-2 Exh.-1, Filename "BROWN

Initial Contact.AVI" (hereafter "Video-1")). Ranger Leachman's declaration notes that the time

stamp on the body camera videos are set to Greenwich Mean Time. (Doc. 53 at 10).

Ranger Leachman approached Plaintiff's van, announced that he was a police officer for

the Park Service, and knocked on its windows. (*Id*. at 10-11, citing Leachman Decl. ¶ 8, and

Video-1 at :00-:23.3). Ranger Leachman observed that the side windows had been covered by

black trash bags and the rear windshield was tinted. (*Id*. at 11, citing Leachman Decl. ¶ 8). Ranger

Leachman's training caused him to suspect that something illegal was occurring inside the vehicle

because its windows were covered. (*Id*.). Having receiving no response from anyone inside the

van, Ranger Leachman returned to his patrol vehicle and turned off his recording device. (*Id*.,

citing Leachman Decl. ¶ 8; and Video-1 at :23-:36). Ranger Leachman proceeded with caution and

was worried about being lured into a possible trap due to the fact that Redwood State and National

Park has had serious problems pertaining to the transport of contraband to and from Oregon. (*Id*.,

citing Leachman Decl. ¶ 4, 8). When he turned to walk back to his car, Plaintiff opened a rear

ventilation window on her van by about an inch. (*Id*., citing Leachman Decl. ¶ 9). Ranger

Leachman then heard Plaintiff's voice, reactivated his recording device, and moved back towards

the van. (*Id*., citing Leachman Decl. ¶ 9, & Doc. 53-2, Exh. 1 Filename "BROWN Resist.AVI"

(hereafter "Video-2") at :00-:33). Despite the fact that Plaintiff had opened the rear ventilation

window by an inch, Ranger Leachman was still unable to see inside. (*Id*., citing Leachman Decl. ¶

9; & Video 2 at :33-:39). He then asked Plaintiff about her presence in the parking lot, and

Plaintiff told him that she had spent the previous night parked there, which confirmed his

suspicion of illegal overnight camping in the parking lot. (*Id*., citing Leachman Decl. ¶ 9; Video-2

13

at :40-47). Ordinarily, rather than citing people for overnight camping, Ranger Leachman preferred to identify the campers and then direct them to a local retail store parking lot with a camper-friendly policy. (*Id.*, citing Leachman Decl. ¶ 5). Accordingly, he asked Plaintiff to open a window or a door to the van so that he could identify her. (*Id.*, citing Leachman Decl. ¶ 10; & Video-2 at 1:00-1:30). Plaintiff refused to open any window or door, refused to produce a form of documentary identification, and instead, Plaintiff gave her name verbally. (*Id.*, citing Leachman Decl. ¶ 10; & Video-2 at 1:00-1:33).

Ranger Leachman submits that there were two reasons for his insistence on seeing a physical form of documentary identification; the first was due to his experience with persons he was investigating and who had verbally identified themselves falsely, and the second was that it was obvious to him that Plaintiff had driven the van into the parking lot causing him to feel the need to inquire about whether she had a driver's license. (*Id.* at 11-12, citing Leachman Decl. ¶ 10; & Video-2 at 1:34-1:40). Plaintiff maintained that her driver's license was packed away; additionally, Plaintiff's refusal to open a window or present identification caused Ranger Leachman to suspect that the occupant (or occupants) of the van were either the subject of an arrest warrant or that illegal activity was being concealed inside the van. (*Id.* at 12, citing Leachman Decl. ¶ 10; & Video-2 at 1:40-1:44). While Ranger Leachman repeatedly requested that Plaintiff open a door or window such that he could see inside the van (*id.*, citing Leachman Decl. ¶ 10; & Video-2 at 2:03-2:06, 2:41-3:20), Plaintiff persisted in her refusal (*id.*, citing Leachman Decl. ¶ 10; & Video-2 at 2:06, 2:41-3:20).

Uncertain as to how many people might be inside that van, and exasperated by Plaintiff's refusal to cooperate, Ranger Leachman returned to his patrol car and called for backup, asking for another Park Ranger, and if none were available, then for Del Norte County Sheriff's deputies. (*Id.*, citing Leachman Decl. ¶ 11; & Video-2 at 3:43-4:26). Ranger Leachman submits that it was at this point that he decided to arrest Plaintiff for violating California Penal Code § 148(a)(1), which prohibits resisting, delaying or obstructing a police officer. (*Id.*, citing Leachman Decl. ¶ 11). While waiting for backup officers to arrive from the Sheriff's Office, Ranger Leachman called his supervisor, Ranger Gregory Morse, to discuss the situation; following which, Ranger

Morse confirmed that Ranger Leachman was making the right decision. (*Id*., citing Leachman Decl. ¶ 12; Doc. 53-5 Declaration of Gregory Morse (hereafter "Morse Decl.") ¶ 4; & Video-2 at 6:20). Additionally, Federal Defendants note that in the course of her deposition, Plaintiff confirmed that she made a conscious decision to remain in her van, and that it was only when she saw a non-police car arrive that she decided to finally exit. (*Id*. at 13, citing Plaintiff's deposition testimony, as attached to the Declaration of Michael Pyle (hereafter "Pyle Decl."), Exh. 1 at 97:12-98:6). Plaintiff admitted in her deposition testimony that she believed that she had the right to ignore Ranger Leachman's commands, despite her several prior convictions for violating California Penal Code § 148. (*Id*., citing Pyle Dedl. Exh. 1 at 172:4-22).

More than fifteen minutes after Ranger Leachman had called for backup, Plaintiff finally exited through the side door of her van; and, after communicating that fact to his dispatch, he immediately approached her. (*Id*., citing Leachman Decl. ¶ 14; Video 2 at 21:48-22:07). When Plaintiff opened the front door of her van and began to reach inside, Ranger Leachman repeatedly asked her to stay out of the front-seat area of her van because he became concerned that Plaintiff might be reaching for a weapon, a concern that was heightened by Plaintiffs large size and her positioning, which prevented him from seeing what she may be reaching for inside the van. (*Id*., citing Leachman Decl. ¶ 14, 16; & Video-2 at 22:10-22:14). Plaintiff continued her noncompliance and persisted in reaching around the front-seat area of her van. (*Id*., citing Leachman Decl. ¶ 14; & Video-2 at 22:10-22:14). After closing the distance between them, Ranger Leachman first grabbed Plaintiff by the shoulder, and then by her left wrist, in an effort to pull her away from that part of the van. (*Id*., citing Leachman Decl. ¶ 16; & Video-2 at 22:15-22:16). Then, by grabbing Plaintiff's left wrist again, along with grabbing the upper portion of the same arm, Ranger Leachman used this leverage to force Plaintiff to the ground by employing a technique designed to gain control over someone resisting an arrest by forcibly transitioning that person's body from a standing to a prone position, but while avoiding serious injury to either party. (*Id*. at 13-14, citing Leachman Dec. ¶ 17, 18; & Video-2 at 22:18-22:30). Once prone, Plaintiff was eventually handcuffed. (*Id*. at 14, citing Leachman Decl. ¶ 19; & Video-2 at 22:35-23:30).

United States District Court
Northern District of California

1        At this point, Del Norte County Sheriff's Deputies arrived on the scene, and because

2  Ranger Leachman was concerned about the possibility of someone hiding inside the van, one of

3  the arriving deputies performed a protective sweep of the van to ensure their collective safety in

4  the event that weapons or another person might be concealed inside the van. (*Id.*, citing Leachman

5  Decl. ¶ 20; & Video-2 at 23:33, 23:58). Once handcuffed, Ranger Leachman patted-down Plaintiff

6  for weapons, during and after which Plaintiff repeatedly complained that the handcuffs were

7  causing her wrist pain, as well as complaining of suffering a disability, and complaining that the

8  handcuffs were too close together. (*Id.*, citing Leachman Decl. ¶ 20, 22; & Video-2 at 25:40-

9  28:08, 24:30, 31:20-31:30). Ranger Leachman checked the handcuffs and determined that they

10  were not too tight because he was able to move Plaintiff's wrists around within each side of the

11  handcuffs; also, he remedied the fact that the handcuffs were too close together by interlocking

12  two sets of handcuffs together in order to allow Plaintiff greater flexibility to move her arms and

13  shoulders, while still being restrained. (*Id.*, citing Leachman Decl. ¶ 22; Video-2 at 31:20, 31:23-

14  31:30).

15        As Plaintiff was being placed in the back seat of Ranger Leachman's patrol car, she asked

16  Ranger Leachman to find and retrieve a black backpack and an envelope, containing her driver's

17  license, a debit card, and some currency, from inside her van, and to bring those items to the jail

18  with her. (*Id.*, citing Leachman Decl. ¶ 23, 25-27; & Video-2 at 28:37-29:06). Ranger Leachman

19  agreed to do so. (*Id.* Leachman Decl. ¶ 25 & Exh. 1 Filename "More BROWN.AVI" (hereafter

20  "Video-3") at 5:45). While Ranger Leachman was searching pursuant to Plaintiff's request in

21  order to find the bag and envelope, Ranger Robert Toler arrived on the scene. (*Id.* at 15, citing

22  Leachman Decl. ¶ 26; Video-3 at 13:00; & Doc. 53-4, Declaration of Robert Toler (hereafter

23  "Toler Decl.") ¶ 2). Ranger Leachman then handed Ranger Toler a bag containing a number of

24  prescription pill bottles found in Plaintiff's van, and asked him to begin the process of taking

25  inventory of the contents of the van in preparation for having it impounded. (*Id.*, citing Leachman

26  Decl. ¶ 26; Video-3 at 13:00; & Toler Decl. ¶ 3). Ranger Leachman then continued the search for

27  the remainder of Plaintiff's requested items until he had found them all, after which he transported

28  Plaintiff to jail. (*Id.*, citing Leachman Decl. ¶ 25-27; & Video-3 at 5:45-8:47 (backpack), 13:48-

15:43, 15:59-16:25 (envelope)).

While Ranger Leachman transported Plaintiff to jail, Ranger Toler completed his inventory search of Plaintiff's van, noting the condition of the van and a general description of its contents on a form. (*Id*., citing Toler Decl. ¶¶ 4-5 & Exh. 1 (CHP Vehicle Report)). During this process, Ranger Toler found a pill bottle in another person's name, and further, the pills inside the bottle did not match what was indicated on the label. (*Id*., citing Toler Decl. ¶ 6). Once Ranger Toler was able to determine the nature of the pills, and that they were not illegal under the circumstances, Ranger Toler returned them to Plaintiff upon her release from jail and when she went to the Crescent City Information Center seeking the release of her impounded van. (*Id*., citing Toler Decl. ¶ 6, 7). During that encounter, Ranger Toler activated his recording device, the video recording shows Ranger Toler returning these pills to Plaintiff, while also giving her a copy of the CHP Vehicle Report (CHP 180 Form), and the contact information to the vehicle storage facility, in order to aid Plaintiff in the retrieval of her van. (*Id*., citing Toler Decl. ¶ 6; & Doc. 53-4 Exh. 1 DVD with Filename "PICT0015_2014.12.21_18.47.16.AVI" (hereafter "Video-4") at 00:20-1:00).

*Federal Defendants' Arguments*:

Federal Defendants begin by arguing that they did not violate any of Plaintiff's Fourth Amendment Rights. (Doc. 53 at 17). They submit that Ranger Leachman acted reasonably when he decided to confront Plaintiff in the early morning hours for having backed her van into a parking space while covering all of the windows in an area where overnight camping was prohibited; further, that the California Code of Regulations, Title 14 § 4451, prohibits overnight camping in areas not designated for that activity, and that overnight camping includes "the use of any parked or standing vehicle for the purpose of sleeping during nighttime hours." (*Id*., citing 14 Cal. Code Regs. § 4301(g), (u)). Federal Defendants contend that because Plaintiff admitted to overnight camping, a reasonable officer would form a suspicion that Plaintiff was in fact engaged in illegal activity, namely, camping in an area "not designated for that activity." (Doc. 53 at 18).

Federal Defendants also submit that pursuant to the Supreme Court's decision in *Heck v. Humphrey* 512 U.S. 477, 486-87 (1994), recovery of damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," requires plaintiffs to prove that the

conviction or sentence was reversed, expunged, otherwise invalidated, or at least called into question by a federal court's issuance of a writ of habeas corpus. (Doc. 53 at 18). Because Plaintiff was convicted of resisting, obstructing, or delaying a police officer, and because her conviction has not been overturned or otherwise called into question, Federal Defendants contend that her cause of action for false arrest must fail as a matter of law. (Doc. 53 at 18). Federal Defendants add that, in any event, probable cause did in fact exist for Plaintiff's arrest for willfully resisting, delaying, or obstructing Ranger Leachman in the attempted discharge of his duties. (*Id*. at 18-19).

Federal Defendants also contend that Plaintiff's arrest did not involve the excessive use of force and that she was taken into custody with the minimum amount of force necessary (*id*. at 19-22), noting that Ranger Leachman did not use, or even threaten to use, any of his weapons, and that he never physically struck Plaintiff. (*Id*. at 20). Instead, Ranger Leachman limited himself to using an elbow take-down technique, which Federal Defendants argue was one of the least forceful options available to him, and that its use was reasonable under the circumstances due to Plaintiff's refusal to comply with repeated directives to stop reaching around inside her van, causing him to fear that she might be reaching for a weapon. (*Id*. at 21).

As to the searches conducted during and after Plaintiff's arrest, Federal Defendants argue that the searches conducted by Rangers Leachman and Toler did not violate any of Plaintiff's Fourth Amendment rights. (*Id*. at 22-26). First, they argue that an arrestee's person, and their surrounding area of immediate control, may be legally searched, incident to that arrest. (*Id*. at 22). Second, they note that under circumstances such as these, that arresting officers are allowed to initially conduct an inspection to determine the number and identity of the occupants of a lawfully detained motor home, or as in this case, a van being used similarly to a motor home, where the enclosed nature of the vehicle prevents the arresting officers from determining how many occupants may be inside the vehicle. (*Id*.).

Federal Defendants add that it was reasonable for Ranger Leachman to suspect that a person was hiding inside of the vehicle that might pose a threat to his safety, particularly in light of the fact that a sun visor and trash bags had been used to cover the windows. (*Id*.). Because it was impossible to see the interior of the van, Federal Defendants submit that police officers were

justified in performing a protective sweep, or a brief visual inspection, of the inside of the van at the time of Plaintiff's arrest. (*Id*. at 22-23). Likewise, Federal Defendants contend that Ranger Leachman's pat-down search of Plaintiff's person, to search for any weapons, during her arrest was reasonable and legally justified. (*Id*. at 23).

Federal Defendants maintain that Ranger Leachman was also legally entitled to search for the two items that Plaintiff requested be retrieved from her van because Plaintiff effectively consented to such a search by affirmatively requesting that it be done. (*Id*. at 23). The video evidence from Ranger Leachman's body camera recording shows that Plaintiff affirmatively requested that he search her van for a backpack and an envelope; and, Federal Defendants note that in any event an inventory search of the van (given her arrest) was justified under the law. (*Id*. at 23-24). Federal Defendants also contend that Ranger Toler was justified in conducting his inventory search of Plaintiff's van as a necessary step to having the van towed and impounded. (*Id*. at 24). Noting that the inventory search and the impounding were both undertaken pursuant to the Rangers' community caretaking function, Federal Defendants note that the van had to be impounded to prevent it from becoming a target of vandalism or theft, as its only occupant had been arrested, but that its contents had to be first inventoried for the same reason. (*Id*.). Federal Defendants contend that their inventory search of Plaintiff's van was performed pursuant to standard procedure governing the identification of personal property in the vehicle to be impounded. (*Id*. at 24-25). Standard procedure required the inventory search to include the opening of closed containers found within the vehicle, it also required that the vehicle be taken to a licensed storage facility by a commercial towing service. (*Id*. at 25). The process involved a visual inspection of the van itself as well as of its contents (which included opening and examining the contents of closed containers such as pill bottles). (*Id*.). Because Ranger Toler was unable to identify certain pills by outward examination alone, his removal of those pills from Plaintiff's vehicle is argued not to constitute an independent seizure because it did not meaningfully interfere with her possessory interest in the pills, as the pills were to be impounded with the van while she was in jail, and, because they were returned to her upon her release from jail. (*Id*.).

As for Plaintiff's Eighth Amendment claim, Federal Defendants maintain that such a claim can not be brought in this context. (*Id*. at 26). Because Plaintiff confirmed during her deposition that the claimed violation of her Eighth Amendment rights took place on December 21, 2014, the day of her arrest, Federal Defendants contend that this claim fails as a matter of law because the Eighth Amendment's prohibitions do not apply until after conviction and sentence, which did not take place until several months later. (*Id*., citing Doc. 53-1 Pyle Decl. Exh. 1 (Deposition of Alice Brown) at 205:8-10). Concerning Plaintiff's Fourteenth Amendment claim, Federal Defendants argue that this claim also fails as a matter of law because the Fourteenth Amendment is directed at actions by states and that it is not applicable to the federal government. (Doc. 53 at 26).

Federal Defendants also submit that Rangers Keltner and Morse are independently entitled to summary judgment on all claims because neither had any personal involvement in any of Plaintiff's alleged constitutional violations. (*Id*. at 27-28, citing Doc. 53-3 Declaration of David Keltner (hereafter "Keltner Decl.") ¶¶ 4-5; & Doc. 53-5 Morse Decl. ¶¶ 1, 4, 6). Federal Defendants add that Ranger Morse remembers that, prior to Plaintiff's arrest, he told Ranger Leachman during a brief phone conversation that he should wait for backup if possible, that he should focus on remaining safe, and that he should do what he needed to do to control the situation. (*Id*. at 28). Following Plaintiff's arrest, Rangers Morse and Leachman spoke again on the phone briefly, wherein Ranger Morse inquired about the level of force used, as well as its surrounding circumstances, and the physical condition of Plaintiff and Ranger Leachman. (*Id*., citing Morse Decl. ¶ 5).

Finally, Federal Defendants submit that they are entitled to qualified immunity. (*Id*. at 28-29). Federal Defendants argue that they did not violate any of Plaintiff's federally-protected rights because the officers had probable cause to believe that she had committed the violation of illegal camping, and also that she had delayed or obstructed their investigation. (Doc. 52 at 28). Thus, Federal Defendants submit that the uncontroverted evidence demonstrates that Ranger Leachman's use of force was objectively reasonable under the circumstances, and that the subsequent searches of both Plaintiff's person and her van and its contents fell within well-established exceptions to the Fourth Amendment's prohibition against unreasonable searches. (*Id*.

at 28-29). Accordingly, Federal Defendants submit that they are entitled to qualified immunity because Plaintiff can not show that any Federal Defendant violated clearly established law. (*Id*. at 29-30).

### County Defendants' Motion for Summary Judgment

On February 16, 2018, County Defendants also filed a motion for summary judgment, attaching seven declarations and portions of Plaintiff's deposition testimony thereto. (Doc. 56). County Defendants also filed a request for the court to take judicial notice of a court decision from a California state court. (*See* Doc. 57).

*County Defendants' Declarations and Plaintiff's Deposition Testimony:*

County Defendants submit that at 7:20 a.m. on December 21, 2014, a county dispatcher received a request for assistance from a National Park Ranger who was dealing with a person who was refusing to get out of their vehicle. (Doc. 56 at 9). Sheriff Deputies Neal Oilar, Robert Clarkson, Adam Daniels, and Sergeant Grant Henderson separately responded. (*Id*. at 9-10, citing Doc. 56-7, Declaration of Neal Oilar (hereafter "Oilar Dcl.") ¶ 3; Doc. 56-2, Declaration of Robert Clarkson (hereafter "Clarkson Decl.") ¶ 3; Doc. 56-6, Declaration of Adam Daniels (hereafter "Daniels Decl.") ¶ 3; & Doc. 56-3, Declaration of Grant Henderson (hereafter "Henderson Decl.") ¶ 3.). Deputies Oilar and Clarkson arrived together and were the first to arrive on the scene; at that time Plaintiff was already on the ground with one hand secured in handcuffs while Ranger Leachman was attempting to secure Plaintiff's other hand. (*Id*. at 10, citing Oilar Decl. ¶ 3; Clarkson Decl. ¶ 3; and, Leachman Decl. ¶¶ 19-20.).

When Deputies Oilar and Clarkson approached, Deputy Clarkson asked Ranger Leachman if anyone else was in the van, to which Ranger Leachman replied that he did not know. (*Id*. at 10, citing Leachman Decl. Ex. 1, Video-2 at 23:30-24:10; Oilar Decl. ¶ 4; & Clarkson Decl. ¶ 3). For that reason, Deputy Oilar undertook a brief inspection of Plaintiff's van to ensure that no one else was in the vehicle. (*Id*., citing Oilar Decl. ¶ 4.). County Defendants submit that with the exception of Deputy Oilar's cursory inspection of the interior of Plaintiff's van for reasons related to officer safety, none of the other Sheriff's Deputies who responded to the scene conducted any searches of Plaintiff's van; and that that they did not observe anyone else search Plaintiff's van. (*Id*., citing

21

1    Oilar Decl. ¶ 4; Clarkson Decl. ¶ 5; Daniels Decl. ¶ 4; & Henderson Decl. ¶ 6). Deputies Clarkson

2    and Oilar, using minimal force, helped Ranger Leachman to secure Plaintiff's other hand. (*Id.*,

3    citing Clarkson Decl. ¶ 6; Oilar Decl. ¶ 9.). At that point, one or both of the deputies assisted

4    Ranger Leachman in lifting Plaintiff to her feet. (*Id.*, citing Leachman Decl. Ex. 1, Video-2 at

5    25:00-25:40; Oilar Decl. ¶ 5; Clarkson Decl. ¶ 6).

6        Deputy Daniels was next to arrive on the scene; and, having observed that things appeared

7    to be under control, he departed in order to attend to an emergency call elsewhere. (*Id.*, citing

8    Daniels Decl. ¶ 2, 3). Last to arrive on the scene was Sergeant Henderson, who arrived after

9    Deputy Daniels had left; upon observing Plaintiff being placed in a Park Ranger's patrol vehicle,

10   Sergeant Henderson likewise departed soon after he was told by Deputy Clarkson that the

11   situation was under control. (*Id.* at 11, citing Henerson Decl. ¶¶ 4-5; Leachman Decl. Ex. 1 Video-

12   3 at 00:25-00:50).

13       County Defendants add that none of the Sheriff's Deputies who arrived on scene observed

14   the take-down by Ranger Leachman, the earliest of which arrived after Plaintiff was already on the

15   ground with one of her hands secured with handcuffs. (*Id.*, citing Oilar Decl. ¶ 3; Clarkson Decl. ¶

16   3; Daniels Decl. ¶ 2; Henerson Decl. ¶ 4). Further, County Defendants note that Deputies Oilar

17   and Clarkson used only "minimal" force when helping Ranger Leachman complete the process of

18   handcuffing Plaintiff and when helping lift her to her feet. (*Id.*, citing Oilar Decl. ¶¶ 5, 9; Clarkson

19   Decl. ¶ 6; Leachman Decl. Ex. 1, Video-2 at 23:00-25:40). None of the Sheriff's Deputies who

20   arrived on scene observed any actions by Ranger Leachman, or anyone else, which appeared in

21   any way improper. (*Id.*, citing Oilar Decl. ¶ 8; Clarkson Decl. ¶ 5; Daniels Decl. ¶ 4; Henderson

22   Decl. ¶ 6).

23       As to Sheriff Apperson, County Defendants contend that he was not even sworn in as

24   Sheriff of Del Norte County until two weeks after Plaintiff's arrest. (*Id.*, citing Doc. 56-4,

25   Declaration of Erik Apperson (hereafter "Apperson Decl.") ¶ 1). County Defendants add that

26   Sheriff Apperson was not present during Plaintiff's arrest; he did not supervise or train any of the

27   deputies who responded to the incident; and he had not formulated or overseen any of the policies

28   in place at the time of Plaintiff's arrest. (Doc. 56 at 11, citing Apperson Decl. ¶¶ 2-4). Instead,

during the period up to and including Plaintiff's arrest, Dean Wilson was Sheriff of Del Norte County. (*Id*. at 11-12, citing Doc. 56-5, Declaration of Dean Wilson (hereafter "Wilson Decl.") ¶ 1). During his tenure, Sheriff Wilson's focus was on administration, he was not involved in the day-to-day operations of the Department, nor did he directly supervise deputies; rather, his deputies reported directly to their supervising sergeants. (Doc. 56 at 12, citing Wilson Decl. ¶¶ 3-5). Sergeants would report to commanders, who in turn were responsible for overseeing training and operations, and for generally keeping Sheriff Wilson advised and updated. (*Id*.). Thus, Sheriff Wilson did not participate in the events surrounding Plaintiff's arrest; nor did he direct or control the activities of the Deputies who responded to the scene. (*Id*., citing Wilson Decl. ¶ 4).

*County Defendants' Arguments:*

County Defendants couch Plaintiff's claims under the Fourth Amendment as encompassing: (1) individual liability claims against the four Sheriff's Deputies who responded to the scene of Plaintiff's arrest based on their alleged failure to intervene and prevent her arrest and the searches of her person and property; (2) the failure by Sheriffs Wilson and Apperson to adequately supervise and train these deputies; and, (3) pattern and practice claims against the County of Del Norte for failing to properly train the same deputies. (*Id*. at 14-15). Regarding Plaintiff's Eighth Amendment claim focused on the event of her arrest, County Defendants argue that such claims are not properly invoked until after there has been an adjudication of guilt. (*Id*. at 15). Regarding Plaintiff's Fourteenth Amendment claim, County Defendants argue that because the Fourth Amendment of the United States Constitution specifically addresses Plaintiff's claims of illegal search and arrest, as well as her excessive force claim, Plaintiff therefore has no remedy under the Fourteenth Amendment. (*Id*.). County Defendants also submit that Plaintiff's false arrest claim is barred by *Heck*, noting that a §1983 claim that would necessarily imply the invalidity of a plaintiff's state court criminal conviction or sentence is not cognizable until the conviction or sentenced is overturned. (*Id*. at 16).

County Defendants maintain that for a failure to intercede theory of liability to be viable, the officer must have had a realistic opportunity to observe and prevent the alleged §1983 violation. (*Id*.). County Defendants note that it is undisputed that Deputies Clarkson, Oilar and

23

Daniels, as well as Sergeant Henderson, did not arrive on scene until after Plaintiff was already on the ground, with one hand already secured by Ranger Leachman's handcuffs. (*Id*. at 17). Therefore, County Defendants argue Plaintiff's theory of liability fails because none of the responding deputies had an opportunity to assess whether Ranger Leachman had probable cause to arrest Plaintiff in the first place, or to observe and assess: Plaintiff's failures to obey Ranger Leachman's commands before their arrival, Plaintiff's resistance before their arrival, Ranger Leachman's use of force prior to their arrival, or any search of Plaintiff's vehicle prior to their arrival. (*Id*. at 17-18).

Additionally, County Defendants submit that Deputies Clarkson, Oilar, and Daniels, and Sergeant Henderson, can likewise not be held to be liable for any alleged unlawful acts after they left the scene, which took place shortly after Plaintiff was secured in Officer Leachman's patrol vehicle. (*Id*. at 18). As for Deputy Daniels, he neither assisted Ranger Leachman, nor did he observe any unlawful actions by any of the officers dealing with Plaintiff, and he left the scene shortly after arriving. (*Id*.). Regarding Sergeant Henerson, County Defendants contend that it is undisputed that when Sergeant Henderson arrived after on the scene, Plaintiff was already in custody and was being placed in Ranger Leachman's patrol vehicle, at which point Sergeant Henderson left shortly after Plaintiff was safely in the patrol car. (*Id*.).

As to Deputies Clarkson and Oilar, County Defendants content that they arrived when Plaintiff was already on the ground with one hand already secured in handcuffs, at which point these two Deputies only briefly held Plaintiff's unrestrained arm steady for long enough to assist Ranger Leachman in completing the application of his handcuffs. (*Id*.). Thereafter, Deputy Oilar conducted a protective sweep of the inside of Plaintiff's van because it had covered windows that prevented anyone from seeing inside, and also because Ranger Leachman told the deputy that he did not know whether there was anyone else inside Plaintiff's van. (*Id*. at 18-19). With the exception of Deputy Oilar's protective sweep of Plaintiff's van, County Defendants submit that no Sheriff's Deputy otherwise approached, inspected, or in any way searched Plaintiff's vehicle, nor did they observe Ranger Leachman or anyone else approach, inspect, or otherwise search Plaintiff's van. (*Id*. at 19). County Defendants add that either Deputy Oilar, or Deputy Clarkson,

or both, assisted Ranger Leachman in jointly lifting Plaintiff off the ground and back onto her feet. (*Id.*). County Defendants suggest that Deputy Oilar's brief protective sweep of the van was justified for officer safety reasons due to the covering of all its windows; and, that deputies used only reasonable and proper force when helping Ranger Leachman handcuff Plaintiff and lift her to her feet. (*Id.*). Thus, because no deputy observed any action by Ranger Leachman that would lead them to believe he was violating any of Plaintiff's rights, County Defendants contend that they are entitled to judgment as a matter of law. (*Id.* at 20).

County Defendants also argue that the individually named Deputies and the current and former Sheriffs are entitled to qualified immunity. (*Id.* at 20-21). County Defendants contend that it is not possible to find that under the uncontroverted facts of the case that any of the named County Defendants could reasonably believe they were violating any clearly established law. (*Id.* at 21). No responding deputy either committed or observed any act that would amount to a violation of any of Plaintiff's federally-protected rights; and, County Defendants submit that there is no evidence that Plaintiff sustained any violation of any federally protected right at all. (*Id.*). As to Sheriffs Apperson and Wilson, County Defendants submit that they are also entitled to qualified immunity because they were not present at the scene; because they did not train any of the responding deputies; and because they did not directly supervise any of the responding deputies. (*Id.*). County Defendants argue that Sherrifs Wilson and Apperson are also not liable on failure to train or failure to supervise theories, noting that Plaintiff has failed to demonstrate that each named defendant personally participated in the alleged deprivation of her rights, or that they knew of the violations and failed to act to prevent them. (*Id.* at 21-22). Alternatively, County Defendants submit that because Plaintiff did not suffer any violation of any constitutional rights due to any act or omission of Deputies Daniels, Clarkson, Oilar, or Sergeant Henderson, Plaintiff's supervisor-liability claims, as well as her *Monell* claim against Del Norte County, must also fail for that reason. (*Id.*). County Defendants add that Sheriff Apperson was not even sworn in as the Sheriff of Del Norte County until two weeks after Plaintiff's arrest, that he had no authority over any responding deputies, and that he was not present during Plaintiff's arrest. (*Id.* at 23). As to Sheriff Wilson, County Defendants submit that he also had no involvement in Plaintiff's arrest, and that he

25

did not personally supervise or train any of the responding deputies. (*Id*.).

County Defendants add that the County of Del Norte, as well as individual County Defendants named in their official capacity, are not liable under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). (Doc. 56. at 23). County Defendants submit that in December of 2014, the Sheriff's Department used a standard policies and procedures manual, in use at numerous law enforcement agencies throughout the state of California. (*Id*. at 24, citing Doc. 56-5, Wilson Decl. ¶ 6). All deputies and supervisors were provided regular updates to the manual; that they were given on-going training through in-person and online programs; that they were properly trained in the use of force, scene responses, search procedures, officer safety, crime investigation and arrest procedures; and, that during Sheriff Wilson's tenure, there was no policy, practice, or custom at the Del Norte County Sheriff's Department that condoned or encouraged unlawful searches or seizures, unlawful arrests, or the use of excessive force. (*Id*. at 24-25, citing Wilson Decl. ¶¶ 7, 9).

Finally, County Defendants submit that their use of a standardized policies and procedures manual, and their various training programs, have been designed to assure that lawful procedures are employed when interacting with the public, for which reason, the County of Del Norte submits that it is entitled to summary judgment. (*Id*. at 25, citing Wilson Decl. ¶ 9). County Defendants note that municipal liability against an individual can only attach to individuals if they possess the final authority to establish municipal policy with respect to the action ordered. (*Id*.). Because Sheriff Wilson was the only named individual of the County Defendants with such final decision making authority on December of 2014, County Defendants argue that Sheriff Wilson has no municipal liability because there was no policy, practice or custom in place that permitted or encouraged unlawful searches, seizures, arrests, or the excessive use of force. (*Id*.).

### Plaintiff's Responses

On March 9, 2018, Plaintiff filed her responses to both of the pending motions for summary judgment, as well as submitting a disc as an exhibit containing: four video clips, two audio clips, and a subfolder entitled, "Dispatch1," containing another forty-two audio clips. (Docs. 60, 61, and Docket Entry of 03/09/2018.). Both of Plaintiff's responses begin with similar, if not

identical, recitations of the substance of the allegations in her Amendment Complaint, to which both documents appear to make reference almost exclusively. (*See* Doc. 61 at 2-5, Doc. 60 at 2-4).

In her response to Federal Defendants' motion for summary judgment, Plaintiff suggests that there are many issues of material fact in dispute, but rather than identify or enumerate her conception of all such disputed issues of material fact, Plaintiff limited herself to listing only examples. (Doc. 61 at 6). The first of such examples comes in the form of Plaintiff announcing an intention to offer some unspecified "evidence" to a jury that "the body cam and audio recording evidence contradict the declarations of the Federal Defendants." (*Id.*). The second of such examples is Plaintiff's contention that Federal Defendants have omitted certain unspecified, but important, facts from their declarations, and that a police report supposedly attributable to Ranger Leachman contains unspecified false statements; Plaintiff submits that these are facts that would be borne out by a review of the audio and video files found on the Maxell CD-R disc which Plaintiff has filed as an exhibit. (*Id.*). Specifically, Plaintiff "directs the court to review the file/body cam recording entitled "More Brown Post Arrest" at the very beginning and at the very end of the Maxell CD-R disc." (*Id.* at 7). Plaintiff concludes her response to Federal Defendants' motion by noting: that she would not permit Ranger Leachman to see inside her van because she believed he needed to articulate probable cause first; that she did not give Ranger Leachman consent to search her van when he took her keys from her during her handcuffing; that she believed she was lawfully parked in a rest area; that she was homeless at the time and living inside her van; that her research has led her to conclude that the cases cited by Defendants do not apply to this case; that excessive force claims and determinations as to qualified immunity must not be decided in summary judgment; and, that the Fourteenth Amendment protects detained persons "from excessive force that amounts to punishment." (*Id.* at 7-8).

In her response to County Defendants' motion for summary judgment, Plaintiff begins with the same recitation of allegations from her Amended Complaint. (Doc. 60 at 2-4). Following which, while directing the court to review the contents of the Maxell CD-R disc, Plaintiff reiterates the contention that a genuine dispute as to material facts exists because she "can and will present evidence to the jury to show that the body cam and audio recordings evidence contradict

the declarations of the County Defendants," as they "clearly show four deputy sheriff bodies standing in a circle around Plaintiff Alice Brown as she tells everyone present that her fourteenth amendment rights were being violated . . ." (*Id*. at 5-6). Plaintiff also suggests that the fact that she remembers having a conversation with Sergeant Henderson, where he does not recall even getting out of his patrol car, represents another genuine dispute over a material fact. (*Id*. at 6). Plaintiff adds that "[s]ome of the County and Federal Defendants actually smiled and laughed out loud as their horrible heartless soulless faces are captured on . . . body cam recording"; however, Plaintiff does not indicate at which point in time or in which context this smiling or laughing took place, or for what reason such laughing or smiling might be considered relevant to the matter at hand. (*Id*). Plaintiff concludes her response to County Defendants' motion by reiterating: her view of a police officers' duty to intervene when witnessing misconduct; her contention that excessive force claims and qualified immunity determinations can only be made by a jury; that she remained unpersuaded by the legal authorities cited by County Defendants'; and, that according to an attached copy of a local news story from 2017 entitled, "Police dog aids authorities in heroin bust," Plaintiff believes that "County Defendants are aware of the necessity of a search warrant as they attempt to search vehicles as reported in the local online news report . . ." (Doc. 60 at 7). Plaintiff's attached news report quoted a social media post from the Del Norte County Sheriff's Department about a car abandoned by a drug suspect, on which a police dog detected the odor of narcotics, and for the search of which police reportedly first obtained a search warrant. (*Id*. at 8-9).

Lastly, it should be noted that on March 26, 2018, ten days after all Defendants had already filed their reply briefs, Plaintiff filed a "notice of errata" and submitted a Memorex DVD-R disc containing a video file entitled, "Brown PC148," along with an explanation that she had forgotten to include this file in her previously filed exhibit (the Maxell CD-R disc) to her responses to Defendants' motions for summary judgment. (*See* Doc. 66). Plaintiff maintains that on this video file, Ranger Leachman's body camera footage, that the bodies of some County Defendants are visibly present during the purported violations of her rights. (*Id*.).

### Federal Defendants' Reply

On March 16, 2018, Federal Defendants filed their reply brief, contending that none of

Plaintiff's arguments in opposition to summary judgment have any merit, and that Plaintiff has effectively ignored their motion. (*Id*. at 3). Federal Defendants reiterate that Plaintiff's claim of false arrest and claims under the Eighth and Fourteenth Amendments all fail as a matter of law. (Doc. 63 at 3). They also contend that claims against Rangers Morse and Keltner must likewise fail because they were neither present at the scene of the arrest, nor did they participate in any other manner in any alleged violation of Plaintiff's rights. (*Id*.). Further, it is submitted that Ranger Leachman's declaration and body camera footage demonstrate that he did not use excessive force during the arrest, and that he did not undertake any improper searches. (*Id*.). As for Ranger Toler, Federal Defendants contend that he merely performed an inventory of Plaintiff's van, a routine law enforcement action that often follows the arrest of an automobile driver. (*Id*.). Federal Defendants submit that Plaintiff has failed to address any of these arguments and their supporting evidence. (*Id*.).

Federal Defendants then take exception to Plaintiff's reliance on the allegations in her Amended Complaint as evidentiary support of the existence of a genuine issue of material fact. (*Id*. at 3-4). Federal Defendants note that F.R.C.P. 56 requires that factual positions be supported by citations to particular parts of the record (Fed. R. Civ. P. 56(c)(1)), also noting that contentions of fact that are made in support or opposition to any motion must be supported by affidavit or declaration, and by appropriate references to the record such as extracts from depositions, interrogatory answers, requests for admission, or affidavits or declarations. (Doc. 63 at 4, citing Civil Local Rule 7-5(a)).

Regarding Plaintiff's announcement that she "can and will present evidence to the jury to show that the body cam and audio recording evidence contradict the declarations of the Federal Defendants," it is submitted that the time to present that evidence was in her opposition brief. (Doc. 63 at 4). As to Plaintiff's statement that Federal Defendants omitted relevant facts from their declarations, while contemporaneously submitting a Maxell CD-R disc containing a number of video and audio files, Federal Defendants submit that the court is not required to review all of the files on the disc to look for a triable issue of fact. (*Id*.) (citing *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (district courts need not undertake a review of

29

the entire file in a search for evidence establishing a genuine issue of fact). Thus, Federal

Defendants object to Plaintiff's reliance on the Maxell CD-R disc because Plaintiff did not

authenticate any of its contents, or explain what portion of which file contains relevant evidence.

(Doc. 63 at 4). Federal Defendants also disagree with Plaintiff's contention that excessive force

claims and qualified immunity determinations must be resolved by a jury, noting that a court may

determine that the force used by an officer is reasonable as a matter of law, or that an officer is

entitled to qualified immunity as a matter of law. (*Id*. at 5-6). Indeed, Federal Defendants argue

that the qualified immunity inquiry addressing the whether clearly established law renders certain

conduct unconstitutional can *only* be decided by a judge. (*Id*. at 6) (citing *Morales v. Fry*, 873 F.3d

817, 821 (9th Cir. 2017)).

As to Plaintiff's contention that she believed she had the right to sleep in her van at the

Hiouchi Visitor Center, Federal Defendants submit that Plaintiff's incorrect belief about where

overnight camping might be permitted, or where it may be prohibited, does not operate to create a

genuine issue of material fact. (*Id*. at 7). Finally, regarding Plaintiff's reliance on *Graham v.

Connor*, 490 U.S. 386, 395 n.10 (1989), to argue that the Fourteenth Amendment protects pre-trial

detainees from excessive force that amounts to punishment, Federal Defendants contend that such

an argument fails: because Plaintiff has not cited any facts to indicate that her rights were violated

under that standard; because the Fourteenth Amendment is not applicable to the federal

government; and also because the Fourth Amendment, rather than the Fourteenth Amendment,

governs excessive force claims against law enforcement officers during the time that arrested

persons remain in the arresting officer's custody. (Doc. 63 at 7).

**County Defendants' Reply**

Also on March 16, 2018, County Defendants filed their reply brief. (Doc. 65). Therein,

County Defendants begin by likewise taking issue with Plaintiff's reliance on the allegations from

her Amended Complaint in her responses to the motions for summary judgment, suggesting that

Plaintiff has not put forward any competent, material facts that might create a triable issue. (*Id*. at

2). County Defendants describe the contents of Plaintiff's exhibit, the Maxell CD-R disc, as

containing the following files: (1) dispatch audio recordings between the Park Rangers and their

dispatcher ("Dispatch1"); (2) a phone call recording from a federal dispatcher to a county dispatcher ("AB"); (3) recorded calls between the county dispatcher and Deputies Oilar ("4P10"), and Clarkson ("4P4"), and Sergeant Henderson ("2S14") ("AB1 file"); (4) a video of the initial contact with Plaintiff's van from Ranger Leachman's body camera ("Initial Contact – no action"), noting that this is the same video as what was produced in Leachman Decl. Ex. 1, Video-1; (5) Plaintiff's self-made audio recording ("media_0.amr"), noting that the transcript form this audio has already been filed as an Exhibit to Parties' Statement of Undisputed Facts; (6) video footage from Ranger Leachman's body camera after Plaintiff's arrest and placement in his vehicle ("More BROWN post arrest"), noting that this is the same video as what was produced in Leachman Decl. Ex. 1, Video-3; and, (7) video footage from Ranger Leachman's body camera during Plaintiff's transportation to jail ("BROWN transport"). (Doc. 63 at 2).

County Defendants maintain that, aside from the Maxell CD-R, Plaintiff has not submitted any declarations or any other evidence to support her opposition; also, because Plaintiff's various statements of fact in her response to the County Defendants' motion are not supported by a proper declaration based upon personal knowledge, they should not be considered by the court. (*Id.*) (citing Fed. R. Civ. P. 56(c)(4); and F.R.E. 602, 801, 802). Regarding Plaintiff's argument in opposition to the effect that body camera recordings show four Sheriff's Deputy bodies standing in a circle around Plaintiff as she tells them her rights are being violated, County Defendants' response is two-fold. (Doc. 63 at 3). First, it is submitted that Plaintiff has failed to comply with Fed. R. Civ. P. 56(c)(1)(A) by failing to cite to any particular part of the materials in the record to support that assertion; second, County Defendants note that "a review of the total video footage taken by Ranger Leachman from the time Deputies Oilar and Clarkson arrived on scene until they left the scene confirms that at no time are four deputies seen standing in a circle and there is no competent evidence that Deputies Oilar, Clarkson, Daniels and Sergeant Henderson were standing together at the scene." (*Id.*, citing generally, Leachman Decl. Ex. 1, Videos 1-3; & Plaintiff's Maxell CD-R, "Initial Contact – no action file," & "More BROWN post arrest"). County Defendants add that the only Sheriff's Deputies who appear at all on video are Deputies Oilar and Clarkson: once while assisting Plaintiff's handcuffing, where the video periodically shows their

31

1   arms and bodies; and a second time early in the video file entitled, "More BROWN post arrest,"

2   which was just before Deputies Oilar and Clarkson departed the scene and they were being briefed

3   about the nature of the incident before their arrival. (Doc. 63 at 3).

4       Reiterating that none of the individual Sheriff's Deputies arrived on scene until after

5   Plaintiff was already on the ground, County Defendants note that this fact is also supported by the

6   compilation of the Sheriff Department dispatch communications submitted by Plaintiff on the

7   Maxell CD-R, in the "AB1" folder. (*Id*. at 4). While County Defendants concede that Plaintiff

8   complained about a Fourth Amendment violation when Deputies Oilar and Clarkson were

9   assisting Ranger Leachman with handcuffing her, County Defendants submit that a mere

10  exclamation of a violation of the Fourth Amendment does not give rise to liability for any failure

11  to intercede before they arrived on the scene. (*Id*. at 5). County Defendants argue that there is no

12  clearly established law that would require a police officer to intercede and prevent an arrest in

13  progress based solely on an arrestee's exclamation about a perceived Fourth Amendment violation

14  not witnessed by that officer. (*Id*.).

15      County Defendants also object to Plaintiff's statement to the effect that she "believes" she

16  spoke to Sergeant Henderson, arguing that it is speculative and uncertain. (*Id*. at 6). Additionally,

17  County Defendants argue that a district court can resolve excessive force claims on summary

18  judgment if it concludes, after resolving all factual disputes in favor of the plaintiff, that the

19  officer's use of force was objectively reasonable under the circumstances; and, that qualified

20  immunity determinations are for the court to make because the doctrine represents an immunity

21  from suit, rather than a mere defense to liability. (*Id*. at 6-7). Finally, County Defendants contend

22  that Plaintiff has not opposed their motion for summary judgment in favor of Sheriffs Wilson and

23  Apperson, and the County of Del Norte, and so in addition to the reasons previously given, County

24  Defendants contend that summary judgment should be granted as to these parties for that reason as

25  well. (*Id*. at 8) (citing Fed. R. Civ. P. 56(e)(3); & *Beard v. Banks*, 548 U.S. 521, 527 (2006)).

26                                  **LEGAL STANDARD**

27      To be entitled to summary judgment, a party must show "that there is no genuine dispute

28  as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A dispute is "genuine" if such that can be reasonably resolved in favor of the nonmoving party; also, a fact is "material" if it can affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden rests with the moving party to inform the court as to the basis for the motion, and to identify those portions of the record that demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the movant has made such a showing, the burden then shifts to the nonmoving party to identify specific evidence showing that a material factual issue remains for trial. *Id*. The nonmoving party may not rest on mere allegations or denials from its pleadings, but must "cit[e] to particular parts of materials in the record" demonstrating the presence of a material factual dispute. Fed. R. Civ. P. 56(c)(1)(A). The nonmoving party need not show that the issue will be conclusively resolved in its favor. *See Anderson*, 477 U.S. at 248-49. Instead, all that is required is the identification of sufficient evidence to create a genuine dispute of material fact, thereby "requir[ing] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. (internal quotation marks omitted). If the nonmoving party cannot produce such evidence, the movant "is entitled to . . . judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323.

When deciding a motion for summary judgment, the court draws all reasonable factual inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. However, conclusory and speculative testimony does not by itself raise a genuine dispute and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738-39 (9th Cir. 1979).

## DISCUSSION

As an initial matter, the court has reviewed all of the evidence and arguments submitted in support of, and in opposition to, the Defendants' motions for summary judgment, including all of the video and audio files submitted by all Parties. It should also be noted that Plaintiff's claims against all County Defendats are almost entirely dependent on her claims against Ranger Leachman, and because the court finds that Plaintiff's claims against all Federal Defendants fail

1   for one reason or another, the court does not find it necessary to reach each and every argument

2   made by all Defendants.

3       Any discussion of Plaintiff's case must begin with the fact that the California Code of

4   Regulations prohibits overnight camping, including by use of any parked vehicle, in areas not

5   designated for that activity. 14 Cal. Code Regs. §§ 4451, 4301(u). The parking lot of the Hiouchi

6   Visitors' Center is such a place. Consequently, when during the pre-dawn hours of December 21,

7   2014, Ranger Leachman came across a van that had been backed into a parking space, and had a

8   covered front windshield and covered windows, he suspected that the occupants had camped there

9   illegally overnight. His suspicion was confirmed when Plaintiff admitted to him that she had in

10  fact camped there overnight. Plaintiff's subsequent refusal to exit her van for approximately

11  twenty minutes, and her resistance to Ranger Leachman's attempts to place her under arrest when

12  she did finally exit her van, led to her arrest and conviction for resisting, delaying, or obstructing

13  Ranger Leachman while he was engaged in the course of his duties. It is undisputed that this

14  conviction has not been set aside or otherwise called into question.

15      *Plaintiff's Claim of False Arrest (Claim-5)*:

16      As to Plaintiff's claim of false arrest (Claim-5) against Federal Defendants, *Heck*, 512 U.S.

17  at 486-87, makes it incumbent on Plaintiff to prove that the conviction or sentence stemming from

18  her allegedly false arrest has been reversed, expunged, or otherwise called into question in order

19  for her to recover damages for "harm caused by actions whose unlawfulness would render a

20  conviction or sentence invalid." Further, the holding in *Heck* is not limited to § 1983 actions, *Heck*

21  also applies to actions brought against federal agents under *Bivens*. *See Martin v. Sias*, 88 F.3d

22  774, 775 (9th Cir. 1996); *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991). Thus, because

23  Plaintiff has conceded that the conviction stemming from her arrest was affirmed on appeal, and

24  that it has not otherwise been called into question, her claim of false arrest, as well as any

25  suggestion by her that she was arrested without probable cause, is barred under *Heck*. *See e.g.,*

26  *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (*Heck* barred claims of

27  false arrest and false imprisonment).

28      In Claim-5, while naming all eleven Defendants, Plaintiff claims that Ranger Leachman

34

effectuated a "false arrest of Plaintiff Alice Brown when he willfully and knowingly arrested Plaintiff Brown on false pretense (sic) in order to gain access to Brown's vehicle." Claim-5 does not include any reason as to why any of the other ten Defendants are named under the claim. (*See Amended Complaint*, Doc. 45 at 28). For that reason alone, all named Defendants except for Ranger Leachman are entitled to judgment as a matter of law; additionally, based on *Heck*, Plaintiff's claim of false arrest against Ranger Leachman, as well as the other named Defendants, is barred in light of the continuing validity of the conviction stemming from that arrest.

The court also finds that even if Plaintiff's claim had not been barred under *Heck*, the evidence before the court shows that Ranger Leachman had probable cause to arrest Plaintiff, at first for illegal camping (to which she admitted), and then for obstructing, resisting, or delaying his investigation. Probable cause to arrest someone exists when under the totality of the circumstances known to the officers at the scene, a prudent person would believe that the suspect had committed a crime. *Dubner v. City & County of San Francisco*, 266 F.3d 959, 966 (9th Cir. 2001); *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992). California Penal Code § 148(a)(1) prohibits willfully resisting, delaying, or obstructing a police officer in the discharge or attempted discharge of any duty. Beyond that, a police officer, while conducting an investigatory detention of a motorist, may lawfully require occupants of vehicles to enter, exit, or re-enter the vehicle as required. *See e.g., United States v. Williams*, 419 F.3d 1029, 1030-31 (9th Cir. 2005) (passenger who has exited can be made to reenter the vehicle); *Young v. City of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011) (driver who has exited can be made to reenter the vehicle); *see also Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1330 (9th Cir. 1995); *United States v. Cannon*, 29 F.3d 472, 476-77 (9th Cir. 1994) (officer can take reasonable protective measures such as ordering the driver to get out of the car as the particular circumstances require upon a lawful stop for a traffic violation); *United States v. Behanna*, 814 F.2d 1318, 1321 (9th Cir. 1987) (although the vehicle was stationary, the officer's precautionary action of requesting the occupants to get out of the car was reasonable when officers found two persons asleep inside, the vehicle had an expired license plate, and the person in the passenger seat had a record of concealed weapon charges).

Thus, the law required Plaintiff to render some modicum of cooperation when confronted with the fact of her illegal camping while having chosen to cover up all of the windows of her van. Instead, Plaintiff disregarded numerous instructions to exit her van or to uncover a window or open a door and then later to cease rummaging around in the front seat of her van once she had finally exited. Lastly, Plaintiff ignored numerous instructions to get down and put her hands behind her back while instead continuing to physically resist Ranger Leachman's attempts to place her under arrest. Accordingly, the court grants summary judgment with respect to Claim-5 as to all Defendants.

### *Plaintiff's Claim of Excessive Use of Force (Claim-4)*:

Naming all eleven Defendants, Plaintiff contends in her Amended Complaint that Ranger Leachman used excessive force during the arrest, causing her physical injury. She contends that the other named National Park Rangers and Sheriff's Deputies had an opportunity to intervene but did not, and that the County of Del Norte, as well as its current and former Sheriffs, are liable for allegedly failing to appropriately train the responding deputies. (Doc. 45 at 26-27). Plaintiff later clarified during her deposition testimony that she was subjected to excessive force during the initial take-down by Ranger Leachman, and then again during the process of being lifted to her feet, during which process Ranger Leachman was aided by one or both of Deputies Oilar and Clarkson. For the following reasons, the court finds that the degree of force used by Ranger Leachman and Deputies Oilar and Clarkson in this case was minimal, and that its use was objectively reasonable.

An excessive force claim pertaining to an arrest, evaluated under the Fourth Amendment, can not be maintained against a police defendant if his or her use of force was objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 396, 397 (1989) (in determining the reasonableness of force, the nature and quality of the intrusion on the individual's Fourth Amendment interests must be balanced against the countervailing government interests at stake); *see also Scott v. United States*, 436 U.S. 128, 137-139 (1978); and, *United States v. Robinson*, 414 U.S. 218 (1973). Furthermore, because excessive force claims often involve disputed factual contentions that require the drawing of varying inferences that could support a

36

verdict for either party, courts are instructed to grant summary judgment as to such claims "sparingly." *Glenn v. Washington County*, 673 F.3d 864, 871, 878 (9th Cir. 2011); *see also Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (*en banc*) ("Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."). However, sparingly does not mean never, because "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Skylstad v. Reynolds*, 248 Fed. App'x 808, 811, 2007 U.S. App. LEXIS 22593, *6-7 (9th Cir. 2007) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'")). Plaintiff's unsupported assertions to the contrary notwithstanding, district courts may determine, albeit sparingly, that the force used by a police officer was reasonable as a matter of law. *See e.g.*, *Donovan v. Phillips*, 685 Fed. App'x 611, 612 (9th Cir. 2017) (affirming a grant of summary judgment in favor of a highway patrolman in an excessive force case where the patrolman had gripped a non-compliant automobile passenger by the wrist, and pulled her arm downward causing her to roll onto the ground).

Here, uncontroverted video recording evidence from Ranger Leachman's body camera clearly shows that any intrusion into Plaintiff's Fourth Amendment interests was minimal under the circumstances, and that Ranger Leachman used the least amount of force necessary to arrest Plaintiff at a time when she was rummaging through the front seat area of her van and while blocking Ranger Leachman's view of her hands and of the interior of her van by nature of her positioning and size. Any reasonable officer in Ranger Leachman's position would have been concerned that Plaintiff might be searching for a weapon, particularly in light of the belligerence and hostility that Plaintiff had displayed throughout the encounter. However, commendably, Ranger Leachman kept his cool, he did not use, or threaten to use, any of the numerous weapons that he carried, nor did he strike Plaintiff, instead he used the simple technique of grabbing one of

her arms with both of his hands and using that leverage to force her to the ground. In addition to the objective reasonableness of this degree of force, the uncontroverted evidence in the record reflects that this technique was specifically designed and implemented to law enforcement use such as to allow for the capture of a non-compliant person while avoiding serious injury to that person or to the arresting officer. As for lifting Plaintiff to her feet, the uncontroverted evidence in the record clearly reflects that when one or two deputies assisted Ranger Leachman in lifting Plaintiff to her feet, the force used was the minimum necessary to achieve the objective of helping Plaintiff to her feet. Plaintiff has presented no evidence or declaration to the contrary, nor has she even gone so far as to allege any detail as to *how exactly* excessive force might have been used in lifting her to her feet.

Additionally, the court finds that the government interests surrounding Plaintiff's arrest also justify the level of force used by Ranger Leachman under circumstances that were created by Plaintiff's combative responses before she finally exited her van, and her insistence on rummaging around the inside of her van despite Ranger Leachman's alarmed and repeated commands for Plaintiff to step away from the van. The uncontroverted video evidence in the record makes it clear that immediately before Plaintiff was physically taken into custody, she appeared to pose an immediate threat to Ranger Leachman's safety. Thus, the court finds that Ranger Leachman was justified in taking control of what objectively appeared to be a dangerous situation in order to protect himself, and that in doing so with restraint, he made do with the use of a minimally-intrusive technique. Accordingly, the court finds that no reasonable trier of fact could arrive at any conclusion but that the use of that technique was objectively reasonable under the circumstances. Based on the uncontroverted evidentiary record, the court finds that the degree of force used by Ranger Leachman in taking Plaintiff into custody, and by the Sheriff's Deputies and Ranger Leachman in lifting Plaintiff to her feet, was objectively reasonable and that Plaintiff has presented no evidence to the contrary in order to create any genuine issue of material fact. Accordingly, the court grants summary judgment with respect to Claim-4 as to all Defendants.

*Plaintiff's Claim as to Search and Seizure (Claim-1):*

In Claim-1, naming all eleven Defendants, Plaintiff submits that Ranger Leachman

38

violated her Fourth Amendment rights "by conducting an unreasonable search of her person and van without probable cause[,] with no search warrant, court order or consent"; adding that Rangers Keltner, Toler, and Morse, and Deputies Clarkson, Oilar, Daniels, and Henderson, were being sued for their failure to intervene, and, the County of Del Norte, and its current and former Sheriffs, for allegedly failing to appropriately train the deputies "in constitutional law." (Doc. 45 at 18-20).

Uncontroverted evidence in the record demonstrates that no County Defendant either observed or participated in any search of Plaintiff's person or property, with the exception of Deputy Oilar performing a brief protective sweep (inspection) of the interior of Plaintiff's van upon arriving on the scene to find Plaintiff on the ground with Ranger Leachman attempting to handcuff her. For that reason alone, Deputies Clarkson and Daniels, as well as Sergeant Henderson, are entitled to summary judgment, simply because the uncontroverted evidence demonstrates that they never observed any of the Rangers' searches such that they could have been expected to intervene.

In any event, when someone is placed under arrest and taken into custody, officers may lawfully search their person and the area within their immediate control, that is, the area from which an arrested person my get possession of a weapon. *Chimel v. California*, 395 U.S. 752, 763 (1969). For arrests effected in or near an enclosed setting, such as a motor home, or as in this case, a van being used as a *de facto* motor home, officers are permitted to perform a cursory inspection of those parts of the premises where someone may possibly be hiding, as incident to the arrest and in order to protect the safety of the police officers and others. *Maryland v. Bluie*, 494 U.S. 325, 337 (1990); *see also United States v. Wiga*, 662 F.2d 1325, 1331 (9th Cir. 1981) (if the record reflects facts and circumstances which would support a reasonable belief that other persons may have been inside the motor home who may have been likely to endanger police officers, a cursory inspection of the motor home is justified by the protective sweep doctrine).

Here, because Ranger Leachman was busy trying to handcuff Plaintiff, who was resisting when Deputies Oilar and Clarkson arrived, and because Plaintiff had installed coverings on all of the windows of her van, Deputy Oilar's protective sweep of Plaintiff's van, done at Ranger

Leachman's behest, was a clearly justified protective sweep of an area in which someone may very well have been hiding. The record reflects that Ranger Leachman's experience counseled that campers in the Redwood National Park are usually not alone, and that when she was rummaging around the front seat of her van while obscuring his view, Ranger Leachman was concerned for his safety. Uncontroverted evidence also makes it clear that Deputy Oilar's protective sweep consisted of nothing more than a brief visual inspection of the interior of Plaintiff's van; therefore, the court finds that the protective sweep was objectively reasonable, and that Plaintiff has pointed to no evidence that could create any triable issue as to its legality. Likewise, when Plaintiff's arrest was complete and she was in custody, Ranger Leachman was legally authorized, incident to the arrest, to conduct a search of Plaintiff's person for any weapons or any other items that may be used as weapons. *Chimel*, 395 U.S. at 763; *see also Arizona v. Gant*, 556 U.S. 332, 339 (2009).

Once Plaintiff was handcuffed and placed in a patrol car, uncontroverted declaration and body camera recording evidence, in addition to Plaintiff's own admission to the fact in the course of her deposition, reflects that Plaintiff then *requested* that Ranger Leachman search through her van for a backpack and an envelope containing various items, and to bring those items along with her to the jail. Thus, when Ranger Leachman acquiesced to Plaintiff's request, and proceeded to search her van for the requested items, the search was consensual.

It is also uncontroverted that once Ranger Leachman finally located Plaintiff's requested items, and confirming that fact with her, that he then promptly terminated his search. Because searches conducted pursuant to valid consent are lawful (*Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973)), and because it is undisputed that Ranger Leachman's search for Plaintiff's requested items was conducted at her behest, the court finds that Plaintiff has likewise failed to point to any evidence that could create a triable issue as to the legality of this search.

While Ranger Leachman was transporting Plaintiff to jail, Ranger Toler made a decision to impound Plaintiff's van given the fact that Plaintiff was being taken into custody, the van had no other occupants, and because it could not simply be left unattended in the Hiouchi Visitors' Center parking lot indefinitely. *See United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477, n.4 (9th Cir. 1993); and, *Miranda v. City of*

40

*Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005). It is undisputed that standard procedure for Park Rangers in the Redwood National Park requires the storing or impounding of any vehicle whose driver is taken into custody, and for which no other person is available to assume possession; also, that once the decision is made to impound a vehicle, standard procedure requires that its contents, including closed containers, be inventoried, noted, and described on a particular form. It is also undisputed that Ranger Toler's inventory search of the contents of Plaintiff's van followed his agency's standard procedures. *See South Dakota v. Opperman*, 428 U.S. 364, 372-75 (1976); *Colorado v. Bertine*, 479 U.S. 367, 374 n. 6, 375 (1987); see also *See United States v. Mancera-Londono*, 912 F.2d 373, 375-76 (9th Cir. 1990) (inventory search is constitutional if it undertaken pursuant to standardized police procedures or routine practice).

During this inventory search, Ranger Toler found some pills that he could not identify, specifically, he found a pill bottle in another person's name, and the pills inside the bottle did not match what was indicated on the label. Ranger Toler removed the pills from Plaintiff's van, and once he was able to determine the nature of the pills, and that they were not illegal under the circumstances, Ranger Toler returned them to Plaintiff when she went to the Crescent City Information Center upon her release from jail. Regarding these pills, the court finds that the removal of those pills from Plaintiff's van for further investigation, and returned to Plaintiff upon her release from custody, was not a meaningful interference with Plaintiff's possessory interest in the pills, as they were to be impounded along with the van in any event. *See Arizona v. Hicks*, 480 U.S. 321, 324 (1987); and, *Maryland v. Macon*, 472 U.S. 463, 469 (1985). Because the inventory search allowed Ranger Toler to visually inspect the pills, a further inspection of the pills' external characteristics should not be considered to constitute a separate or additional search because doing so caused no additional or further diminution of Plaintiff's possessory or privacy interests than was the case with the inventory search. *See Hicks*, 480 U.S. at 325; *see also Illinois v. Andreas*, 463 U.S. 765, 771 (1983). Thus, the court finds that each of the above described searches that took place in Plaintiff's case was legally justified in all respects, and that Plaintiff has pointed to no evidence that could create a triable issue as to their legality. Accordingly, the court grants summary judgment with respect to Claim-1 as to all Defendants.

*Plaintiff's Eighth Amendment Claim (Claim-2)*:

In Claim-2, Plaintiff suggests that Ranger Leachman violated the Eight Amendment "when he unreasonably seized and searched [Plaintiff] for engaging in the innocent and necessary act of sleeping in her vehicle and homelessness," and further, that when Ranger Leachman caused her van "to be impounded[,] it was a cruel and unusual and evil slap in the face by an equally cruel and unusual evil man." (Doc. 45 at 21-22). Plaintiff sued the other Defendants for failing to intervene, and for failing to appropriately train their subordinates in "constitutional law." (*Id*. at 22). Notably, in the course of her deposition, Plaintiff conceded that her Eighth Amendment claim is based solely on the events of December 21, 2014, the day of her arrest.

The Eighth Amendment's prohibitions against cruel or unusual punishment are not applicable until after a conviction is entered and a sentence is imposed. *Graham*, 490 U.S. at 394 ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . ."); *Tennessee v. Garner*, 471 U.S. 1, 7-22 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); *Whitley v. Albers*, 475 U.S. 312, 318-326 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard); *Goodman v. United States*, 33 F.3d 1060, 1062 (9th Cir. 1994) ("[T]he Eighth Amendment is not applicable until there has been a formal adjudication of guilt in accordance with due process of law."). Because Plaintiff's allegations of any potential Eighth Amendment violation concern the force used during her arrest, and with the economic impact of impounding her van, both of which predated any conviction or imposition of sentence in the case, the court finds the Eighth Amendment to be inapplicable to Plaintiff's allegations that her rights thereunder were violated. Accordingly, the court grants summary judgment with respect to Claim-2 as to all Defendants.

*Plaintiff's Fourteenth Amendment Claim (Claim-3)*:

In Claim-3, Plaintiff suggests that Ranger Leachman violated her Fourteenth Amendment rights "by disregarding the fact that [Plaintiff] Brown has constitutional rights by virtue of being born in the United States, despite her race (Black) and her homeless status," and that the other

Defendants are liable for failing to intervene or train their subordinates. (Doc. 45 at 23-25). In this regard, the court finds that Plaintiff's claim under the Fourteenth Amendment, directed to Ranger Leachman's conduct, fails as a matter of law because the Fourteenth Amendment's commands are directed at the states, not at the federal government. *See e.g.*, *Hampton v. Mow Sun Wong*, 426 U.S. 88, 95, 100 (1976) (Fourteenth Amendment is not applicable to the federal government, but the Fifth Amendment imposes on the federal government the same obligations that the Fourteenth Amendment imposes on the states); and *Barona Grp. of Capitan Grande Band of Mission Indians v. Am. Mgmt. & Amusement, Inc.*, 840 F.2d 1394, 1406 (9th Cir. 1987) (same). In any event, Plaintiff appears to have simply re-couched all of her allegations about what she perceived to be her false arrest, the excessive use of force, and unreasonable searches and seizures, this time under the heading of the Fourteenth Amendment.

When a particular constitutional amendment or provision explicitly provides protection against a specific form of government behavior, the standards governing that amendment or provision, as opposed to those pertaining to substantive due process, must guide a court's analysis. *Albright v. Oliver*, 510 U.S. 266, 273-74 (1994). Plaintiff has complained that at the hands of a federal officer, she was falsely arrested, subjected to excessive force, and that her property was illegally searched. As discussed, these are allegations for which the Fourth Amendment explicitly provides protection. Because the court has already resolved Plaintiff's various Fourth Amendment claims against her, and because Claim-3 simply re-couches those claims under the veneer of the Fourteenth Amendment, the court grants summary judgment with respect to Claim-3 as to all Defendants.

### *Plaintiff's Monell Claim (Claim-6)*:

In Claim-6, naming only County Defendants, Plaintiff claims that these Defendants had a "pattern and practice of failure to intervene and custom of conspiring to deprive Plaintiff Alice Brown of Fourth, Eighth, Fourteenth Amendment rights . . . [which] had caused Alice Brown to suffer constitutional injury." (Doc. 45 at 29). Plaintiff submits that Sheriff's Deputies Clarkson, Oilar, Daniels, and Henderson were all present when the claimed violations of her rights took place and failed to intercede and that the County of Del Norte, and its current and former Sheriffs

43

failed to intervene and failed to train their subordinates. (*Id*. at 30). As an initial matter, because the court has found that Plaintiff has not pointed to any evidence that would support a genuine issue of material fact as to any violation of any of her constitutional rights, and the court's independent search of the record has not revealed one, Plaintiff's *Monell* claim must fail, at least with regards to the alleged failure to intervene, supervise, or train. After all, in the absence of any constitutional violation by any of the individual officers involved, there remains no logical basis to find that the officers were inadequately trained or supervised. *See Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights. Here, the municipal defendants cannot be held liable because no constitutional violation occurred."). As to Plaintiff's allegation that the County of Del Norte somehow manifests a "pattern and practice of failure to intervene" and a "custom of conspiring to deprive Plaintiff Alice Brown of Fourth, Eighth, Fourteenth Amendment rights," the court finds that Plaintiff has not pointed to any evidence whatsoever in the record that might create a genuine issue of material fact as to any of these allegations, and that the Defendants are therefore entitled to judgment as a matter of law. Accordingly, the court grants summary judgment with respect to Claim-6 as to all Defendants named therein.

> *Additional Considerations:*

The court will also note that a number of the named Defendants had no participation whatsoever in the events surrounding Plaintiff's arrest. It is undisputed that Ranger Keltner was not in Redwood National and State Park on December 21, 2014, and that he was not involved in any way with the events surrounding Plaintiff's arrest. It is likewise undisputed that during Plaintiff's arrest, Ranger Morse was off-duty and asleep at home, and that his only involvement was a pair of brief phone conversations with Ranger Leachman before and after Plaintiff's arrest. It is also undisputed that Sheriff Apperson was not yet sworn in as Sheriff of Del Norte County until two weeks after Plaintiff's arrest, that he was not present during Plaintiff's arrest, and he did not supervise or train any of the deputies who responded to the incident. Given that an officer may generally only be held liable if he or she personally participates in the unlawful conduct, the non-participant Defendants are independently entitled to summary judgment for that reason as well.

44

*See Liston v. County of Riverside*, 120 F.3d 965, 981 (9th Cir. 1997) (affirming summary judgment in excessive force and unreasonable seizure case as to defendant police officers who were not physically present when the alleged constitutional violations took place).

Furthermore, the court notes that all individually named Defendants in this case have made arguments in support of qualified immunity. The central concern of the qualified immunity inquiry "is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct . . ." *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 244 (2009) ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."). The court does not find it necessary to undertake a lengthy qualified immunity analysis because the particulars of Plaintiff's initial stop, of her arrest (including the degree of forced used), and of the searches of her person and property did not violate any of her federally-protected rights, as there was probable cause to believe that she had violated, first California Code of Regulations Title 14 § 4451 (illegal camping), and then California Penal Code § 148(a)(1) (obstructing or resisting an officer). Moreover, because there was no constitutional misconduct involved in this case, Plaintiff has consequently failed to demonstrate that any named Defendant in this case has violated any clearly established law. Thus, at least with respect to the claim that excessive force was used, the court also finds that all Defendants are entitled to qualified immunity.

## CONCLUSION

For the above-stated reasons, Federal and County Defendants' motions for summary judgment (Docs. 53, 56) are GRANTED. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: August 9, 2018.

ROBERT M ILLMAN
United States Magistrate Judge