UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ALICE BROWN,<br><br>    Plaintiff,<br><br>  v.<br><br>NATIONAL PARK RANGER JOEL LEACHMAN, et al.,<br><br>    Defendants. | Case No. 16-cv-07235-RMI<br><br>**ORDER ON MOTION FOR DISQUALIFICATION**<br><br>Re: Dkt. No. 70 |

This case was remanded by the Court of Appeals for two purposes. First, the appellate court directed the undersigned to transfer the case such that a district judge could decide whether or not Plaintiff should have been permitted to withdraw her consent to proceed before a magistrate judge; and, second, if the district judge were to deny Plaintiff's motion to withdraw her consent, then the case would once again be assigned to the undersigned for the articulation of reasons for a prior denial of Plaintiff's disqualification motion. *See Mem. Op.* (dkt. 110) at 3. In December of 2020, the undersigned entered an order directing the Clerk of Court to reassign the case to a district judge such as to effectuate the appellate court's mandate (dkt. 113). On February 10, 2021, Judge Illston denied Plaintiff's motion to withdraw her consent (dkt. 123), and the case was once again assigned to the undersigned for all further proceedings (dkt. 124). Pursuant to the mandate on remand, and for the following reasons, Plaintiff's motion seeking the disqualification of the undersigned is denied.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

In December of 2016, Plaintiff filed suit against a number of federal and state law enforcement officials based on a series of events that culminated in Plaintiff's arrest and a search

of her van on National Park property. *See generally* Amend. Compl. (dkt. 45). After granting Defendants' summary judgment motions (see *Order of Dismissal* (dkt. 78) at 45), and the entry judgment (dkt. 79), Plaintiff appealed (dkt. 84). Thereafter, the case was remanded for the above-described reasons. *See Mem. Op.* (dkt. 110) at 3. Further, after remand, a comprehensive settlement agreement resulted in the stipulated dismissal of the County of Del Norte, Robert Clarkson, Neal Oilar, Adam Daniels, Grant Henderson, Dean Wilson and Erik Apperson ("the County Defendants"). *See Order of December 16, 2020* (dkt. 118) at 3. The case remains pending as to the four individually-named National Park Rangers, Joel Leachman, David Keltner, Robert Toler, and Gregory Morse ("the Federal Defendants"). *See Order of Dismissal* (dkt. 78) at 3; *see also* Amend. Compl. (dkt. 45) at 2-4.

On December 5, 2017, the undersigned conducted a case management conference at which Plaintiff appeared *pro se*, and the County and Federal Defendants appeared through their respective counsel (dkt. 51). In advance of the conference, the Parties had prepared and filed their Joint Case Management Statement which included Plaintiff's hand-written portion constituting her statement of the case. *See* Joint CMC Statement (dkt. 50) at 3-4. Plaintiff's portion of the joint statement was replete with hyperbolic and inflammatory statements; by way of example, in describing the fact that she was sleeping in her van in the parking lot of a visitors' center for the Redwoods State and National Park, Plaintiff described it as "a parking lot in an almost all white racist county, Del Norte County [California]." *Id*. at 3. Further, Plaintiff's commentary and hyperbole had managed to transgress well beyond her portion of the joint statement and had encroached into the Federal Defendants' portion. *See id*. at 5. In essence, Plaintiff had decided that she was not content with merely authoring her own portion of this joint statement, instead, she chose to also annotate the Federal Defendants' portion by using an ink pen to strike through portions of the Federal Defendants' typed text while adding several handwritten statements of a vituperative and disparaging nature in labeling various statements as lies and frauds upon the court. *Id*.

At the subsequent case management conference, the court addressed a number of ordinary and unremarkable scheduling matters and case management issues. *See generally* Tr. (dkt. 108) at

2-19. Initially, the court noted that Defendants intended to file motions for summary judgment following the scheduling of Plaintiff's deposition (which counsel for the County Defendants had scheduled for December 18, 2017); and, after a bit of discussion with Plaintiff and counsel for Defendants, the court modified the timetable for Plaintiff's deposition at her request such as to accommodate Plaintiff's birthday plans. *Id*. at 3-7. Next, the court addressed issues relating to the timetable and form of the forthcoming motions practice such as to address and accommodate the preferences and requests of all involved, including Plaintiff. *Id*. at 7-10. After which, the following exchange took place:

> THE COURT: . . . Let's talk about other things within the Case Management Conference Statement. Ms. Brown, I wanted to say I appreciate you working with Defendants in getting this done, and for talking with Mr. Vrieze about getting depositions done, and for paying attention to the rules to know when to do things. I do appreciate that. I did want to caution you, in the joint case management conference [statement], you crossed through some things and said, lie, lie, this is a lie, fraud upon the court. I understand, you know, this is an emotional issue regarding the distress you allege in this case, but you need to just be careful of accusing officers of the court of fraud upon the court, okay? And, you know, this is a federal case, so we need to just be careful with our words regarding the other parties. I will make sure that they treat you with respect, and I want to make sure you give them respect, too, okay. Do you understand?
>
> PLAINTIFF: Yes.
>
> THE COURT: All right. Do you have any questions about that?
>
> PLAINTIFF: Well, I just feel that the evidence that I had proves there's a fraud upon the court. That's why I confidently wrote the words, "FRAUD UPON THE COURT."
>
> THE COURT: I understand. I understand. But you'll have an opportunity to present that to a jury who will make a decision about that evidence. But, in the meantime, even when attorneys are - - greatly disagree with each other, they still are required to treat each other with respect and not accuse each other of lying and fraud. And so you're acting as your own attorney here, so you have to act as though you, too, have the same decorum as the attorneys would towards each other. Okay? That's all.
>
> PLAINTIFF: I understood I was going to sign this document, so I didn't want to sign a document full of lies and fraud upon the court. So, that's why I initialed it as well with my initials to make sure I'm not signing lies and fraud upon the court.
>
> THE COURT: And I appreciate that, and I appreciate again the continued effort to work together with them. I just want to make sure

3

> that as we move forward, we keep that spirit of cooperation going forward. That way the case will go more quickly and reach resolution.
>
> *Id.* at 10-12.

With that, all involved moved on to the discussion of other subjects such as accommodating Plaintiff's request for access to the electronic docket of the case without the payment of fees, and the preparation of a joint statement of stipulated facts for the forthcoming motions for summary judgment. *Id.* at 12-17. Following this, Plaintiff made an oral motion to withdraw her consent to proceed before a magistrate judge due to her anecdotal description of an experience before a state court judge in another matter, which she considered to have constituted a bad experience. *Id.* at 18-19. That request was denied. *Id.* at 19.

A little more than four months later, on April 9, 2018, Plaintiff filed a written motion seeking disqualification of the undersigned pursuant to 28 U.S.C. § 455(a). *See* Pl.'s Mot. (dkt. 70) at 1, 9. The motion was entirely based on the above-recited exchange that had taken place during the case management conference in December of 2017, and began with Plaintiff stating that "[o]n December 5, 2017, I, Alice Brown, Plaintiff in this matter[,] observed Magistrate Judge Robert M. Illman acting in a manner that showed bias and partiality that constituted serious improprieties." *Id.* at 3. The essence of the motion is embodied in Plaintiff's prefatory statement to the effect that: "Magistrate Judge Robert M. Illman, hereinafter referred to as 'you,' spent several minutes reprimanding me or rather scolding me for drawing a line through sentences and writing 'Lie!' 'Lie!' and 'This is a Lie & Fraud Upon the Court!!!' on a document . . . that I didn't even file . . . [y]ou knew damn well that Defendants' attorney John Vrieze had filed that document . . . not me!" *Id.* Plaintiff went on to add that "the unjustified and unsolicited scolding that I received from you clearly shows that you are utterly intolerant of me . . . Your blatant disregard for the truth is alarming to me and [to] any reasonable person . . . I believe [that] your treatment of me was meant to intimidate me so that I would not be inclined to expose the false statements and fraud upon the court made by John Vrieze and other Defendants in the past, present, and future. But allowing lies, false statements, and fraud upon the court is against my religion in that I am directed by my God to actively oppose evil and God himself considers liars to be evil. Therefore, you are violating my constitutional rights to practice my religion, as a Christian, in everything I say and everything I do

4

on a daily basis. And that's wrong!" *Id*. at 4-5. Beyond this, Plaintiff's motion contains little, if any, substance. *See id*. at 6-12. For example, Plaintiff exerts significant energy in faulting the court for attempting to accommodate her birthday plans in the scheduling of her deposition due to her irrelevant contention to the effect that no such "sua sponte order in open court" to schedule her deposition was necessary because she had never refused to be deposed (characterizing that as yet another lie by counsel for the County Defendants), which was described by Plaintiff as such: "He lied and you chose to believe him!" *Id*. at 6. In this vein, Plaintiff's motion pontificated that "[y]ou had no business involving yourself as 'the court' in the discovery process between me and my Defendants. You had no business issuing a sua sponte order because there was no dispute regarding deposition." *Id*. Plaintiff also complains that she was subjected to "unfair scheduling orders and requirement," noting that "you failed to or refused to set a trial date or refer to ADR." *Id*. at 7-8. Lastly, Plaintiff attached a declaration to her motion, which simply repeated a handful of the above-described contentions, and which concluded with the following profanity-laced statement: "With me being black race, I truly believed that you showed prejudice that day and you made me believe that you have the same thought process regarding black people that Mark Fuhrman does, 'First thing out of a, any [*]'s mouth for the first five or six sentences is a [*] lie.'" *Id*. at 15 (profanity omitted).

## DISCUSSION

There are two deferral statutes that address standards for recusal: 28 U.S.C. §§ 144 and 455. Generally speaking, a judge is required to recuse if he or she has a personal bias or prejudice against a party. *Gonzales v. Parks*, 830 F.2d 1033, 1037 (9th Cir. 1987). A motion to disqualify under § 144 requires the party to file a legally sufficient affidavit alleging facts supporting the claim that the judge is biased or prejudiced against that party. *See United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980). If the affidavit is legally insufficient or unsupported by a factual basis, the court must deny the motion. *Id*. at 868. In this case, Plaintiff did not reference § 144 or submit a § 144 affidavit, Plaintiff's motion seeking disqualification is expressly based on § 455(a). *See* Pl.'s Mot. (dkt. 70) at 1, 9. Accordingly, the court will address Plaintiff's contentions under § 455.

In any event, "[t]he substantive standard for recusal under 28 U.S.C. § 144 and 28 U.S.C. §

455 is the same: Whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) (quoting *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) (*per curiam*)); *see also Sibla*, 624 F.2d at 867 ("The test for personal bias or prejudice in section 144 is identical to that in section 455(b)(1), and the decisions interpreting this language in section 144 are controlling in the interpretation of section 455(b)(1)"). For present purposes, it is important to note that, "[t]he 'reasonable person' in this context means a 'well-informed, thoughtful observer,' as opposed to a 'hypersensitive or unduly suspicious person.'" *Clemens v. United States Dist. Court*, 428 F.3d 1175, 1178 (9th Cir. 2005) (quoting *In re Mason*, 916 F.2d 384, 385 (7th Cir. 1990)). Further, as explained by the Supreme Court in *Liteky v. United States*, 510 U.S. 540 (1994), "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* at 555. The *Litekey* Court explained that, "[i]n and of themselves (i.e., apart from surrounding comments or accompanying opinion), [judicial rulings alone] cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved." *Id*. Thus, while judicial rulings are almost invariably proper grounds for an appeal, they rarely constitute, by themselves, a proper basis for recusal. *Id*. Additionally, the opinions formed by a judge on the basis of events occurring in the course of the proceedings likewise do not constitute a basis for a bias or partiality motion except when they display "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*.

Accordingly, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id*. However, such remarks may support such a motion "if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id*. By way of example, the *Litekey* Court cited to *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants wherein the trial judge had remarked to the following effect: "'One must have a very judicial mind, indeed, not [to be] prejudiced against the German

6

Americans' because their 'hearts are reeking with disloyalty.'" *Liteky*, 510 U.S. at 555 (quoting *Berger*, 255 U.S. at 28). In this regard, the Court elaborated further that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display," are not suitable bases for recusal or disqualification motions. *Liteky*, 510 U.S. at 555-56. Lastly, it should not go without mention that "[a] judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune." *Id*. at 556.

      Under these standards, Plaintiff's motion is baseless. Indeed, the motion is patently frivolous. Plaintiff's unwarranted dissatisfaction with this court's "ordinary efforts at courtroom administration" is not a suitable basis for a disqualification motion. The mundane and unremarkable exchange that took place on the record at the case management conference in December of 2017 (quoted above) was nothing more than an even-tempered and gentle approach to explaining the court's interest in maintaining a measure of decorum. The fact that the exchange was nothing more than an ordinary effort at courtroom administration is objectively manifest in the fact that Plaintiff voiced none of the protestations or displeasure expressed in her motion at the hearing itself. Indeed, when she was asked if she understood the court's desire to maintain a measure of decorum, Plaintiff answered in the affirmative. While Plaintiff made an oral motion to withdraw her consent to proceed before a magistrate judge during the case management conference, she did not make any mention whatsoever along the lines of any of the contentions presented in her disqualification motion. Neither did Plaintiff express any such objection or displeasure in the immediate aftermath of the case management conference. Instead, more than four months later (that is, *after* the court denied her motion to appoint counsel (dkt. 55), and *after* the dismissal of her unsuccessful attempt at an interlocutory appeal (dkt. 67) of that order), Plaintiff appears to have worked herself up to an unfounded and perplexing degree of anger such that her memory of the case management conference itself appears to have become profoundly confused to the point where the contentions in her disqualification motion are totally unrelated to and untethered from the events of the case management conference. In short, because the

contentions in Plaintiff's disqualification motion appear to have been fabricated from whole cloth and because they have no basis in reality, her motion for disqualification is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 4, 2021

*[signature]*

ROBERT M. ILLMAN
United States Magistrate Judge